JETER CLINTON, Appellant, *v.* WILLIAM NELSON et
AL., Respondents.

1. Prisoner Held Under Process.—The general rule is that a minis-
terial officer, who arrests or holds a prisoner under a process, regular in
form and issuing from a court having jurisdiction to issue the same, is
justified in arresting and holding the prisoner.

2. Keeping Prisoner Arrested by United States Marshal.—The
United States Marshal must safely keep a prisoner arrested by him accord-
ing to the mandate of the warrant. He can compel the jailer of the
county to take charge of the prisoner, but the marshal is held responsible
to the court issuing the warrant for the body of the prisoner.

3. Control of the Territorial Penitentiary.—Under the Revised
Statutes of the United States, the United States Marshal in Utah Territory,
has the sole and entire control and management of the Territorial Peni-
tentiary, subject to the general rules and regulations made by the Attorney
General of the United States.

4. False Imprisonment—Malice.—A warrant of arrest being regular
upon its face, and the court having jurisdiction to issue it, the officer
is not liable in an action for false imprisonment without proof of express
malice; if he acts in good faith, he is only liable for compensatory dam-
ages in any event, for injuries against law.

5. Sureties on Official Bond—Misjonider.—Action in form *ex con-
tractu*, on an official bond, in which the principal and his sureties are
jointly sued for the willful and malicious acts of the principal: *Held*, That
sureties on an official bond, in such form of action, are not liable for the
violent or wrongful acts of the officer not done in the line of his official
duty.

Appeal from the Third Judicial District Court.

Action on the official bond of respondent, Nelson, as United
States Marshal for Utah Territory, for an alleged false impris-
onment of appellant. The other respondents were all sued
jointly with Nelson, and were sureties on the bond. Marshal
Nelson had the penitentiary in charge, but had no control of
any other prison. In July, 1877, the plaintiff having been
indicted for murder, a warrant for his arrest was issued by
said court and placed in Nelson's hands, whereupon Clinton

was arrested and placed in one of the rooms forming a part of the penitentiary building. Appellant was finally admitted to bail, when he commenced this action, and alleging not only false imprisonment, but also cruel and inhuman treatment by Nelson while he was a prisoner.

The other facts appear in the opinion of the court.

*Williams & Young,* for appellant.

In this case there are primarily three points to be considered:

*First*—Was the plaintiff arrested, taken to the Utah penitentiary and imprisoned therein by the defendant, William Nelson?

*Second*—If the plaintiff was so imprisoned, was it in pursuance of any trial for and conviction of any offense made punishable by such imprisonment, before a court having jurisdiction, and which did, in pursuance of such conviction, sentence the plaintiff to be imprisoned in the said penitentiary?

*Third*—If the imprisonment was lawful in the first instance, was there such subsequent oppression or cruelty in the treatment of plaintiff by defendant, Nelson, during such imprisonment, as to entitle the plaintiff to maintain this action?

Webster defines a penitentiary to be "a place for penitents, or where penance is inflicted or offenses punished; especially a house of correction in which offenders are confined for punishment and reformation, and compelled to labor."

This is substantially the description of the penitentiary houses mentioned by Blackstone, the erection of which was provided for by act of 19 Geo. III., c. 74, 4 Black. Com. 371.

Bouvier's definition of a penitentiary is "a prison for the punishment of convicts."

And this is the exact sense in which the word is now used, both by courts and legislatures in this country, without a single exception known to us, save only in the present case.

The Utah penitentiary seems to have been left by the United

States, after its erection, to be managed and controlled in the manner provided by the Territorial legislature.

Subsequently, by act of January 10, 1871, Congress provided that the United States Marshal· for the Territory should take the care and control of the penitentiary. Rev. Laws, § 1892.

Various acts of the legislature have been passed on the subject, in all of which it is treated as a place for convicts only. Act in relation to the penitentiary, approved January 16, 1855; act approved January 20, 1860, C. L. p. 103; act approved January 18, 1861, C. L. p. 107.

Also, in the acts of Congress upon the subject the same idea is prominent. Rev. Laws, §§ 1892 to 1895, inclusive; C. L. of Utah, pp. 44, 45.

A person committed for trial could not legally be detained in the penitentiary, even were there no prison provided by law for his reception. But no question can be raised as to where such person should be imprisoned. C. L. pp. 676–7; *Campbell* v. *Hampson*, 1 Ohio, 119.

Although the imprisonment be lawful in the first instance, yet for any subsequent oppression or cruelty this action lies. *Doyle* v. *Russell*, 30 Barb. 305.

*Tilford & Hagan*, for respondents.

The case upon its merits shows no cause of action against the defendants, and the non-suit was therefore properly granted on that ground.

There are two classes of cases under our system, wherein defendants are improperly sued, to-wit:

*First*—When all of them are improperly sued.

*Second*—When one is properly and the others improperly sued.

In the case at bar we contend that the suit cannot be maintained against any of the defendants on the bond, but admitting that defendant Nelson, can be sued in this form of action, then if the other defendants are improperly joined, the cause

Jeter Clinton v. William Nelson et al.

will be dismissed at the trial. Pomeroy on Rem. p. 339, and note; *Rutenburg* v. *Main*, 47 Cal. 221; *Ghiradelli* v. *Bourland*, 32 Cal. 588; *Parsons* v. *Winchell*, 5 Cush. 593; *Campbell* v. *Phelps*, 1 Pick. 65.

A process regular on its face will protect an officer executing it.

That defendant Nelson had control of the penitentiary under the Attorney General of the United States.

That plaintiff was arrested by Crowe, a deputy marshal, on a warrant charging him, plaintiff, with murder.

It is not for the defendants to prove a negative, nor will the court presume a " false imprisonment," for this would be presuming the plaintiff's case in the face of a denial in the answer. See 6 Abb. Digest, cases cited, p. 21.

Sureties on an official bond are not liable for the violent acts of the officer not done in the line of his official duty. *Jewell* v. *Mills*, 3 Bush. 66; 8 B. Mon.

BOREMAN, J., delivered the opinion of the court:

This is an action on the official bond of William Nelson, United States Marshal for Utah Territory, for an alleged false imprisonment of the appellant by Nelson. The action is against Nelson and his sureties on the bond. At the close of the testimony for the plaintiff below (appellant here) the court on motion of respondents, rendered a judgment of nonsuit against the appellant, and thereupon he brings the case to this court.

We believe that the principal dispute here is as to the authority of the marshal to imprison the appellant where he did, the appellant claiming that the county jail was the only proper place for such imprisonment. He was kept in a building adjoining to and connected with the penitentiary.

The arrest and imprisonment was upon a warrant, regular in form, issued to the proper officer from a court having jurisdiction of the matter, and upon an indictment duly found by

a legal grand jury. It seems that there is no controversy as to these facts.

The general rule is that a ministerial officer who arrests or holds a prisoner, under a process regular in form and issuing from a court having jurisdiction to issue the same, is justified in arresting and holding the prisoner.

But it may be said that this will not hold good if the officer transcends his authority. Did the officer transcend his authority in the case now under consideration?

The warrant commanded him to arrest the appellant and bring him before the court to answer the indictment, or if the court had adjourned for the term, to keep or cause him to be kept in custody until the further order of the court.

This was a direct command to keep the prisoner under the control of the officer, and until relieved by order of court, the officer had no means of releasing himself from that command. The court would hold that officer to whom the prisoner had been committed responsible for the prisoner's appearance when called for by the court, and the turning over of the prisoner to any other officer, without any order of court to that effect, would be a violation of the command of the warrant, and subject the officer to punishment therefor. He could, no doubt, compel the jailer of the county to take the prisoner; the jailer would not be justified in refusing to receive him, but the officer must, as to the court, remain responsible for the body of the prisoner to be produced in court when called for by the court. Is it right to say that an officer shall turn over a prisoner to a jailer for safe-keeping, when the officer is responsible for the safe-keeping and may not have confidence in the jailer's ability or will to keep the prisoner safe? It would be great injustice to make such a requirement of an officer; knowing his responsibility, the only safe course for him to pursue is to have the prisoner subject to his supervision and control. In giving testimony in behalf of the appellant, the marshal testified that the penitentiary, with the buildings thereto pertaining, was in his custody, and that he

had no other prison under his care, custody or control in this Territory, and that he had control of the penitentiary under the Attorney General of the United States; that, then, was the only place where he could keep the prisoner under his control.

Let us suppose that the county jail is the only receptacle for prisoners not yet tried and convicted. If the county should not have a jail, as sometimes occurs in this Territory, and the county court fails to make provision to meet the emergency, and this sometimes, perhaps, occurs, must all who are charged and indicted for crime be turned loose upon the community? If the officer turns the prisoner loose he is subject to indictment himself. Yet, if the argument of the appellant be correct, the marshal is just in that fix that he is responsible if he keep the prisoners, and responsible if he lets them go. This is unreasonable, and the law was never intended to work such injustice. Yet it is urged that this is the law and that holding a prisoner at any other place than the county jail is a violation of the law. It is claimed further that it is forbidden, at least inferentially, by the law, to hold such prisoners at the penitentiary. We are aware that the penitentiaries are primarily intended for convicts, and that is the general use to which such places are put. It is not claimed that there is any express prohibition of their temporary use as a receptacle for prisoners held for trial. The statutes of the United States puts the penitentiaries in charge of the Marshal, and further, the Revised Statutes of the United States say that "the Attorney General of the United States shall prescribe all needful rules and regulations for the government of such penitentiary, and the marshal having charge thereof shall cause them to be duly and faithfully executed and obeyed," etc. (§ 1893.)

The marshal had control of the penitentiary under the Attorney General. His use of it was in accordance with those "rules and regulations," which he was obliged to have "duly and faithfully executed and obeyed." It is not shown that the marshal violated any of those "rules and regulations," by

keeping the prisoner there, and we cannot presume that he did. We do not see that the marshal acted improperly, and there was nothing especially objectionable to the buildings themselves. The prisoner was not kept in with the convicts, nor, indeed, within the walls of the penitentiary.

The law requires the marshal to safely keep such prisoners, and to do so he must have a reasonable discretion as to where he shall do so within his district. Mob violence might make the building selected in this case as a very unsafe place for the time being, and the marshal would certainly be justified in eluding the mob by selecting some other building or locality.

It is urged, however, that waiving objection to the place, the treatment of the prisoner was so maliciously cruel as to entitle him to damages.

The warrant being regular, and the court having jurisdiction to issue it, the officer is not liable, says Hilliard, without proof of express malice. Hill. on Torts, 184, 3d ed.

No such malice has been shown. Nothing whatever has appeared that would evince any intention on the part of the marshal to act cruelly toward the appellant. His conduct would evince the very contrary intention.

But, further, the doctrine is well established, we think, that a ministerial officer, in performing his duties, if he acts in good faith, is only liable for compensatory damages for injuries against law, and is not liable for exemplary damages. *Clark* v. *Miller*, 47 Barb. (N. Y.) 38; *Barton* v. *Fulton*, 49 Pa. St. 151; Sedgewick on Meas. of Dam. 520.

What acts of the marshal manifested anything else than the utmost good faith? There was no severity in appellant's treatment beyond that severity which is a necessary incident to every imprisonment. The severity was that of the law and not of the officer. In some respects the marshal was very indulgent and mild toward the prisoner.

In a case where the officer is liable for compensatory damages, that is where no aggravation, no malice is shown—the law fixes the measure of damages at the actual pecuniary loss

Jeter Clinton v. William Nelson et al.

by reason of the tort. Assuming that injury was shown, how is it possible for a jury to determine the damages that the appellant suffered, when no witness has placed any value thereon? The jury could not have said that it was one cent, or twenty thousand dollars, the amount claimed, or any other sum.

But, in the absence of such proof, it might be claimed that the jury could have found nominal damages; but we have been unable to find any authority for even nominal damages, unless there is proven at least a technical violation of duty by the offi er. We do not think that the officer has done anything except such as his duty required. He kept clearly within the law.

There is another branch to this case. It is a suit upon the official bond of the marshal, against him and his sureties, but charges false imprisonment and malicious cruelty. It is in form *ex contractu*, but in effect *ex delicto*. It charges upon contracts, and claims damages for a tort.

Only those persons, as a general rule, can be liable for tort, who are the actual participants or aiders and abettors. Sureties on official bonds may be guilty of aiding or participating in torts, but the simple fact that they are sureties on the bond does not show this. Here there is nothing to show that the sureties knew anything whatever of this alleged tort, and of course they could neither aid nor abet the trespass to the person of the appellant. Thus the complaint blends an action on contract with an action for tort. This cannot be done.

Take all the circumstances together we see no reason to disturb the judgment of the court below, non-suiting the plaintiff below (the appellant here).

The judgment below is, therefore, affirmed with costs.

SCHAEFFER, C. J., and EMERSON, J., concurred.