### RISCHER v. MEHAM, TURNER AND HOOVER.

OFFICIAL MISCONDUCT OF A MARSHAL.

> A marshal, who in the performance of his duty as marshal, arrested the plaintiff for the commission of a misdemeanor, and plaintiff attempted to escape from the custody of said marshal, who attempted to re-arrest him and for the purpose of accomplishing such re-arrest shot and wounded the plaintiff: *Held*, that the act of the marshal in shooting and thereby wounding plaintiff amounted to an official misconduct on his part, for which the sureties on the official bond of such marshal are to be held responsible.

ERROR to the Circuit Court of Common Pleas of Columbiana county.

LAUBIE, J.

This is a proceeding in error brought to reverse the judgment of the court below in sustaining a demurrer to the amended petition, and in rendering judgment of dismissal.

Rischer v. Meham, Turner and Hoover.

The question presented is as to the right of the plaintiff to hold the sureties on the official bond of the marshal of the city of Wellsville for a trespass to his person, committed by the marshal while attempting to capture the plaintiff, who was in the act of escaping from the custody of the officer.

The petition alleges that the marshal, William Meehan, " in the performance of his duty as marshal in the city of Wellsville, arrested plaintiff on charge of committing misdemeanors, to-wit, fighting on the streets of said city, and carrying concealed weapons: that on said day in said city the plaintiff escaped from the custody of said marshal, and was fleeing from him; and that said marshal, Meehan, attempted to rearrest him, and in attempting to rearrest him, and for the purpose of accomplishing the rearrest of the plaintiff, he unlawfully, maliciously and without cause, pointed and aimed a certain pistol, loaded with powder and ball, at plaintiff, and with the same did unlawfully shoot plaintiff the ball from said pistol shot and discharged by defendant Meehan as aforesaid, struck plaintiff and passed through his right hip."

The marshal's official bond is set out in full in the petition, signed by the other defendants as sureties, which recites his election to the office of marshal, his acceptance thereof, and conditioned for the faithful performance of his duties as such marshal. The attempt in the case to hold the bondsmen responsible for this alleged illegal act is for the reason, as we are informed, that the marshal himself is pecuniarily irresponsible.

To this amended petition a general demurrer was filed and sustained, and plaintiff not desiring to plead further or amend, judgment was entered in favor of the defendants, and the petition was dismissed. The court held that the bondsmen were not responsible, and on that ground dismissed the action.

This is somewhat of a novel question in this state, and in a large majority of the states of this country, although this court, in a case to which I will refer hereafter, has heretofore expressed an opinion upon it in harmony with the holding of the court below, but which, upon mature consideration, we are not able to uphold.

The books generally have been searched for cases upon all fours with this, where the illegal act was a trespass to the person, and it is possible that between the researches of counsel and of ourselves we have now before us about all of the cases that can be found in the state reports upon this precise question.

So far as the illegality of the act is concerned, it is conceded that the officer had no right to shoot the plaintiff, in attempting to re-capture him, where the offenses committed by him were mere misdemeanors.

In Kentucky in three cases, *Jewell* v. *Mills*, 3 Bush, 62 ; *Calvert* v. *Stone*, 10, B. Mon., 152 ; and *Murrell* v. *Smith*, 3 Dana, 463 ; and in Utah, in the case of *Clinton* v. *Nelson*, 2 Utah, 284, the negative of this proposition has been decided. That is, that the sureties on the official bond of the officer are not responsible for his acts of violence to the person, for trespass to the person, although done in the attempted discharge of an official duty. But in the last case stress seems to be laid by the court upon the proposition that it was an action " in form *ex contractu*, but in effect *ex delicto*. It charges upon contract, and claims damages for a tort," and that such an action cannot be maintained.

Another case has been cited, *State* v. *Brown*, 11 Ired Law (Nor. Car.), 141, as also sustaining this doctrine, but it is not a case of trespass to

5 C. C. 27

the person, but a levy upon or seizure of, property. The point there decided was—

"A sheriff, knowing that certain goods had been manufactured in the state, and that no license fee was required for them, seized the goods, as he would have been authorized to do if they had been manufactured out of the state, but which he had no authority to do as the facts were. Held, the sureties on his official bond were not liable for his acts in making such seizure."

It has also been held that where an officer wrongfully and unlawfully arrests a person, upon a warrant void upon its face, or without any warrant at all, the sureties on his bond are not liable.

*McLendon* v. *State*, 21 L. R. Ann. (Tenn.), 738; *State* v. *McDonough*, 9 Mo. App., 63.

But in *McLendon* v. *State*, *supra*, the court distinguishes that case from a case where the officer having a valid writ against A., misuses it by seizing the property (and from the tenor of the opinion, the person) of a stranger to his process.

In *State* v. *Beckner*, 123 Ind., 371, s. c. 32 Am. S. R., 263, the facts were similar to the facts in *Jewell* v. *Mills*, *supra*. A constable, with a writ of replevin for a sewing machine belonging to the plaintiff's daughter, and which was in the house of the plaintiff, to obtain the machine, made an unlawful entry in the house, and committed acts of violence to the person of plaintiff, and injured her, and the court held that the sureties on the bond of the constable were responsible for such acts and injuries.

In *Huffman* v. *Koppelkom*, 8 Neb., 344, 12 Neb., 98, it was held :

"The sureties on a sheriff's bond are not liable for acts done *colore officii*, but are liable where the sheriff having a warrant against A., arrests B., and in arresting him unlawfully shoots and wounds him."

In *Cash* v. *The People*, 32 Ill. Court of Appeals, 250, a constable arrested the plaintiff for a misdemeanor, and, instead of taking him before a justice, as was his duty, took him to the lockup, and in doing so, as was alleged, unlawfully, brutally and wilfully beat and assaulted him. The court held, that it was an act of official misconduct, done in the attempted discharge of an official duty, and that the sureties were responsible.

In *Clancy* v. *Kenworthy*, 74 Iowa, 740, it was held, that sureties on a constable's bond, "are liable for acts of the constable, in unlawfully, and abusively arresting and imprisoning and prosecuting a party, and they cannot escape liability by the fact that the acts complained of were instigated by malice."

None of the cases heretofore referred to in this opinion, holding the opposite doctrine, was before the court in that case; and the opinion was based upon the holding in the Kentucky cases, *supra*, and the apparent approval thereof in some of the text books.

These are the only cases that we are able to find squarely upon the proposition.

We are, however, cited to the case of *Farrier's Adm'r*. v. *Cook et al.*, in circuit court of Mahoning county, decided some years ago, which, it is claimed, upholds the doctrine of the court below. And it is true that the court at that time was inclined to uphold, and did express, the opinion that the doctrine as declared in the Kentucky cases was correct. But it is doubtful if the case required a decision of the question. In that case Cook, the officer, in attempting to arrest Farrier, the decedent, shot and killed him, and the action was brought under the statute to recover

damages for a wrongful death, and the point necessary to be decided by the court was whether, under the statute, such an action might be maintained against the sureties on the bond of the officer.

But, at all events, upon a mature reconsideration of the question, we are unanimous in the belief that in so far as the opinion was expressed in that case that the sureties of an officer are not responsible for his illegal acts in committing a trespass upon a person of a party whom he attempts to arrest, it is not good law.

In cases in reference to property, it has been held that the sureties are responsible for the illegal seizure of the property of one person by the officer upon a writ against another person. And, in this respect, we can see no difference in principle between the seizure of property and of persons. But the cases referred to above recognize a distinction in this respect, and exonerate the sureties for acts of violence or trespasses to person, while they would not for similar acts or trespasses to property, thus affording greater security to property than to person, and placing the person of the citizen on a lower plane than his property, and for no other reason than that, being an act of personal violence, it could not be an official act. There is the same want of uniformity, however, in the decisions outside of the state in regard to illegal acts done in respect to property, as there is in regard to trespass upon the person; and in each and all of them the discussion proceeds more upon names than upon principle. They discuss the question of, and distinguish between, acts done *colore officii* and those done *virtute officii*, of malfeasance and misfeasance, voluntary and involuntary.

The real question in all such cases is, was the particular act complained of unlawful, and done while engaged in, and in connection with, the performance of an official duty? Not merely, was such an act illegal, or forbidden by law? If it was done in the attempt to perform an official duty, then it was official misconduct, and we know of no principle of law which should intervene to protect the sureties upon the bond; and public policy requires that they should be held responsible. Public policy demands that for all acts done by an officer in the attempted performance of an official duty, the sureties on his bond should be responsible, and that the public should not be forced to rely solely upon the individual responsibility of the officer. The bond is required, and is given, for the express purpose of securing the public against illegal, unwarranted and unlawful acts of the officer while in the discharge of official duty. If we apply the test of legality simply to the particular act complained of, and finding that illegal, and outside of the line of the officer's duty, and forbidden by law, and hold the sureties not responsible therefor, then the sureties never can be held responsible, because there is no liability for the result of lawful acts. The act must be considered in connection with what the officer is doing, whether he is at the time engaged in the performance of an official duty, as in this case in trying to recapture one who had escaped from his custody; and if he is so engaged, then all his acts in connection therewith, and done in reference thereto, however illegal in themselves, are official acts, and constitute official misconduct for which the sureties should be liable.

It is therefore entirely immaterial to consider whether the act in question would come within the definition of an act done *colore officii*, or act done under the performance of a duty *virtute officii;* whether it was a malfeasance or misfeasance, intentional or unintentional. All that is quite immaterial, if we find that the officer was at the time engaged in the

performance of an official duty, and he improperly performed it, or unlawfully performed it, to the injury of another. That is the underlying principle which should govern all such cases. And we cannot distinguish between an act done by the officer in the execution of process against the person and against property. All wrongs of the nature we are considering result in trespasses. If the officer, for instance, takes the property of B. under an execution against A., or, if he assaults A. in arresting him for a misdemeanor, or shoots or wounds him, as in this case, in either case it is a trespass. In one it is a trespass against the person, and in the other against property, and if we want a name that will apply to and cover both, then trespass would be the proper term to apply. But if it is to be determined on the distinction between an act done *colore officii* and one done *virtute officii* (if there is any substantial distinction between them), then the doctrine in this state, as enunciated by the court of last resort, settles and determines the question.

In *Ohio ex rel.* v. *Jennings*, 4 Ohio St., 418, the syllabus is as follows:

"A seizure of the goods of A., under color of process against B., is official misconduct in the officer making the seizure; and is a breach of the condition of his official bond, where that is, that he will faithfully perform the duties of his office. The reason for this is, that the trespass is not the act of a mere individual, but is perpetrated *colore officii*."

How can this case, upon principle, be distinguished from that? Here the officer in attempting to do that which he was authorized by law to do—to re-capture the man who had escaped from his custody—did it in an improper and unlawful manner, committed a trespass upon the person of the party, and thereby injured him—a clear act of official misconduct. The petition charges that in endeavoring to re-arrest the plaintiff, and for that purpose, he shot and wounded him, thus alleging directly that it was official misconduct upon the officer's part, perpetrated *colore officii*, and not the act of a mere individual.

In *Clancy* v. *Kenworthy*, 74 Iowa, 740, heretofore referred to, the court held:

"If, in executing the functions of his office the defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of opposition result in trespasses or wrongs."

And in *Turner* v. *Sission*, 137 Mass., 191, it is said:

"The object of the bond is to make the sureties responsible for the due performance of his official acts in the service of process, and in his other duties. By an official act is not meant a lawful act of the officer in the service of process; if so the sureties would never be responsible; it means any act done by the officer in his official capacity, under color and by virtue of his office."

I will not pursue this matter further, except to refer to the note in 46 Am. Dec., 514. There, in commenting upon a case in which it was held that where a sheriff, under an execution against A., levies upon the goods of B., he acted *colore officii* and not *virtute officii*, and, therefore, the sureties were not responsible; the author of the note says this is a mistake, and that,

"There is no need of argument on this point beyond the fact that public policy imperatively requires that the obligation of a sheriff's bond should be held to include misconduct of this kind. It matters not whether the sheriff acts *virtute officii* or *colore officii* in such cases. It

would be intolerable to hold that a sheriff may sell the property of strangers under writs in his hands without incurring any more than an individual responsibility which, as was the case in *State* v. *Conover*, *supra*, may turn out to be worthless."

And it would, we think, be still more intolerable to hold that an officer in the attempt to capture a prisoner who was fleeing from his custody, may wrongfully and unlawfully shoot him without incurring more than an individual responsibility, and which is or may turn out to be worthless.

In *Clancy* v. *Kenworthy*, *supra*, it was held to be no defense to show that the acts were done maliciously; but we do not propose now to go that far. This petition charges that the act was done maliciously, but it also charges that it was unlawfully and wrongfully done, and for the express purpose of attempting to re-arrest the plaintiff. It would be improper to sustain the demurrer to the petition when it sets out a right to recover on other grounds although it alleges that the officer acted maliciously.

. Indeed, the allegation that he acted maliciously is inconsistent with the allegation that he did the act of shooting for the express purpose of re-arresting the plaintiff, and it might be rejected as surplusage. It may be possible that for his malicious acts, that is for an intentional act of ill-will —as if with no design to recapture the plaintiff, both for the purpose of maliciously injuring him in revenge for his flight, he maliciously shoots and wounds him, the bondsmen would not be responsible for it. It is not necessary to dispose of that proposition now, and we do not attempt to decide it. It is sufficient for us to hold that this petition declares a cause of action against all of the defendants named, and the court erred in sustaining the demurrer and dismissing the petition.

Judgment reversed, and cause remanded.

*W. F. Lones* and *W. S. Potts*, Attorneys for Plaintiff in Error.

---

## PRIORITY OF LIENS.

[Jefferson Circuit Court, May Term, 1894.]

Woodbury, Frazier and Laubie, JJ.

†THE FIRST NATIONAL BANK OF SMITHFIELD V. W. L. E. & P. COAL CO., ET AL.

1. LEVY ON LAND IN OTHER COUNTY.

   If a judgment is entered in one county, and an execution issued thereon to the sheriff of another county, and by him levied upon lands in his county, and such execution and levy are duly entered upon the foreign execution docket as required by sec. 1212, Revised Statutes, such judgment thereby becomes a lien upon such lands, and such lien will continue for the period of five years from and after the date of such levy as against subsequent purchasers from the execution debtor, notwithstanding such sheriff returns such execution without further proceedings, by order of the judgment creditor.

2. LEVY ON LAND SUBJECT TO PRIOR LIEN.

   If at the time of such levy, such lands are covered by prior liens, a beneficial sale on such execution could not be made, and it would be necessary for the judgment creditor to bring suit against all the parties interested to marshal the liens, and for a sale of the lands, before sale could be had; and if, after such execution was returned as aforesaid, and before such suit was brought, and before all such prior liens were extinguished, the defendants purchased a part of such lands from the execution debtor, such defendants would take the same subject to the lien of such judgment.

†Affirmed by the Supreme Court; opinion, 55 O. S., 233.