CHANDLER vs RUTHERFORD.

Opinion delivered June 7, 1899.

*Liability of Marshal for acts of Deputy.*

A marshal is not liable for acts of his deputy and posse, who, without a writ, and without instruction from him, and without this knowledge, seek to arrest a criminal and who in doing so shoot an innocent party, whom they mistook for the criminal.

Appeal from the United States court for the Northern District of the Indian Territory.

WILLIAM M. SPRINGER, Judge.

Action by James Chandler against Samuel M. Rutherford and others. Judgment for defendants. Plaintiff appeals. Affirmed.

This action was begun at the May term, 1896, of the United States district court for the Northern district of the Indian Territory, by James Chandler, plaintiff, hereinafter called "appellant," against Samuel M. Rutherford, as the United States marshal for the Indian Territory, and George

F. Sparks, John F. Williams, Clarence W. Turner, Andrew
W. Robb, Pleasant N. Blackstone, and James D. Lankford,
the sureties on his official bond, defendants, hereinafter
called "appellees," to recover damages alleged to have been
sustained by appellant resulting from gunshot wounds inflict-
ed upon him by a deputy of said marshal and certain posse-
men acting with and under the direction of said deputy
marshal.    The case, as stated by counsel for appellant, is as
follows:

The facts upon which the appellant relies for recovery
are fully set out in the second paragraph of his complaint.

On the 24th day of December, 1895, the appellant filed
the following complaint:

"United States of America, Indian Territory, North-
ern District—ss.:  Pleas in the United States court in the
Indian Territory, Northern district, at Muskogee, in the
cause numbered 2,910, and entitled 'James Chandler, Plain-
tiff, and Samuel M. Rutherford et al., Defendants.'  Hon.
Wm. M. Springer, judge of said court.   On the 24th day of
December, A. D. 1897, there was filed in the office of the
clerk of said court the complaint in the above numbered and
entitled cause, which is in words and figures as follows:

"No. 2,910.   In the United States Court in the Indian
Territory, Northern District, at Muskogee.    Complaint.
James Chandler, Plaintiff, vs Samuel M. Rutherford, George
F. Sparks, John F. Williams, Clarence W. Turner, Andrew
W. Robb, Pleasant N. Blackstone, and James D. Lankford,
Defendants    The plaintiff, James Chandler, who is a citizen
of the United States and a resident of the Northern district
of the Indian Territory, complains of the defendant Samuel
M. Rutherford, United States marshal for the Northern dis-
trict in the Indian Territory, and George F. Sparks, John
F. Williams, Clarence W. Turner, Andrew W. Robb, Pleas-

ant N. Blackstone, and James D. Lankford, sureties on the official bond of the said marshal, and all of whom are residents of the Northern district of the Indian Territory except George F. Sparks and John F. Williams, who are residents of the State of Arkansas, and James D. Lankford, who is a citizen of the Central district of the Indian Territory, and for cause of complaint the plaintiff states: First. That the defendant Samuel M. Rutherford is and was, at the time of the wrongs hereinafter complained of, the regularly appointed and acting United States marshal for the Northern district of the Indian Territory, and that the defendants George F. Sparks, John F. Williams, Clarence W. Turner, Andrew W. Robb, Pleasant N. Blackstone, and James D. Lankford were the sureties upon the official bond of the said Samuel M. Rutherford, as United States marshal for the Northern district of the Indian Territory, a copy of the said bond being hereto attached, marked 'Exhibit A.' Second. That on or about the 8th day of August, 1895, the plaintiff was walking upon the streets of Muskogee, in said Terrttory, in company with a young lady, when David Adams, —— Walker, —— Hayes, —— Brame, and ——Purty or Purdy, who were the duly-authorized deputies, agents, or posse of the said United States marshal for the Northern district, and who were under the instructions and orders of the said United States marshal, searching for one Flave Carver, for whom a warrant had been issued for horse stealing or some other crime, the exact nature of which to the plaintiff is unknown, and that while plaintiff and said young lady were walking along the streets of the town of Muskogee, and said agents, deputies, or possemen of the said United States marshal were in search of the said Carver, said deputies, agents, or possemen, or some one or more of them, without any just cause, fired in and upon the plaintiff, and severely wounded him in the left side of the head and face, left shoulder, left arm, and back; said deputies, agents, or possemen supposing said

plaintiff was said Carver.    Third.    That, by reason of said wounds, plaintiff was confined to his bed for a long space of time, to-wit, in the space of six weeks, and while he was so confined to his bed, on account of the said wounds, he suffered great bodily pain and great mental anguish, and was compelled to and did pay out large sums of money in nursing, doctor's bill, and medicine in attempting to heal and cure himself of the said wounds, in, to-wit, the sum of two hundred and fifty-seven and 50-100 dollars.    Fourth.    Plaintiff further states that a large number of the shot or leaden bullets with which he was wounded are still in his body, and have permanently and irreparably injured the plaintiff; that there are at least two of the shot or leaden bullets in plaintiff's head, which plaintiff is informed by his medical adviser may cause him serious trouble at any time, and that his left arm has become paralyzed and almost entirely useless, from the effect of the said wounds, and that there are other of the said shot or leaden bullets in his body, which plaintiff is informed by his medical adviser may cause him serious trouble at any time; by reason of which plaintiff says he has been permanently and irreparably injured, to his damage of twenty-five thousand dollars ($25,000).    Fifth.    Plaintiff further states that he had no connection with Flave Carver, the person for whom the said deputies, agents, or possemen of the said marshal were in search, and knew nothing of his whereabouts, or that said deputies, agents or possemen of the said marshal were in search of him, but that he was simply exercising his right as a citizen to pass along the streets of said town of Muskogee.    Wherefore plaintiff prays judgment against the said Samuel M. Rutherford, United States marshal for the Northern district of the Indian Territory, and against the said sureties on his official bond, for the sum of twenty-five thousand two hundred fifty-seven and 50-100 dollars, and the costs of this suit, and all other proper relief. Denison & Maxey, Attorneys for Plaintiff.''

To which complaint appellees filed the following answer: "The defendants, for answer to complaint of the plaintiff, state: First. That they admit that the defendant Rutherford is, and was at the time of the alleged wrong complained of in plaintiff's complaint, United States marshal for the Northern district of the Indian Territory, and that his co-defendants were sureties upon his official bond. Second. That as to whether or not on the 8th day of August, 1895, plaintiff was walking upon the streets of the town of Muskogee, Indian Territory, with a young lady, they are not sufficiently informed to base a belief, and therefore deny the same, and ask that strict proof be required as to that allegation. Defendants deny that David Adams, —— Walker, —— Hayes, —— Brame, —— Purdy, were the duly-authorized deputies, agents, and possemen of the United States marshal for the Northern district of the Indian Tereitory, and that they were under instructions and orders of said marshal in searching for and attempting to arrest one Flave Carver. The defendants especially deny that any deputies, agents, or possemen, or any one under the instructions and orders of the said United States marshal at the time, and in the manner, alleged in said complaint, or at any time or in any manner, fired in and upon the plaintiff, as alleged in said complaint, and severely wounded him in the left side of head and face, left shoulder, left arm, and back. On the contrary, defendants allege that the person who fired upon the plaintiff, as alleged in his complaint, was neither a deputy, agent, nor posseman of the said United States marshal for the Northern district of the Indian Territory, neither was he under the instructions and orders of the said United States marshal, nor his duly authorized deputies. Third. As to whether or not plaintiff was confined to his bed, and suffered great pain, and paid out the sum of money as alleged in his complaint, and as to whether or not he was injured in the manner and form as set forth in his complaint, and is at

present suffering from said effects of said injury as alleged in said complaint, these defendants have not had sufficient information to form a belief, and therefore deny the same, and ask for strict proof as to said allegation. Defendants deny that plaintiff has been permanently and irreparably injured, to his damage in any sum, through the fault or negligence of the United States marshal for the Northern district of the Indian Territory, or his duly-authorized deputies, agents, or possemen, or by any person, under the instructions and orders of said United States marshal. Wherefore, having fully answered, defendants pray to be hence dismissed without day, together with all their costs in this behalf laid out and expended. Chas. B. Stuart, Hutchings & English, Attorneys for defendants."

On the 1st day of December, 1896, there was filed in said case, by leave of the court, an amended complaint, denominated "Second Paragraph of Plaintiff's Complaint," as follows: "The plaintiff, James Chandler, after leave of the court first had and obtained to file the same, for a further and second paragraph of his complaint herein says: First. That he is a resident of the Northern district of the Indian Territory, and that he is not a citizen or member of any nation or tribe of Indians. Second. That the defendants Samuel M. Rutherford, Clarence W. Turner, Andrew W. Robb, Pleasant N. Blackstone, are all residents of the Northern district of the Indian Territory, and that the defendant James D. Lankford is a resident of the Central district of the Indian Territory, and the defendants George F. Sparks and John F. Williams are residents of the state of Arkansas. Third. The plaintiff, James Chandler, complains of the defendants, and says that, prior to and at the time of the commission of the wrongs and injuries hereinafter set forth, the defendant Samuel M. Rutherford was the duly appointed and acting United States

marshal in and for the Northern district of the Indian Territory, and that the defendants George F. Sparks, John F. Williams, Clarence W. Turner, Andrew W. Robb, Pleasant N. Blackstone, and James D. Lankford were the sureties upon the official bond of said Samuel M. Rutherford, as such United States marshal in and for the Northern district of the Indian Territory. A copy of said bond is attached to the original complaint herein, marked 'Exhibit A,' and made a part hereof. Fourth. The plaintiff says that on or about the 8th day of August, 1895, said defendant Samuel M. Rutherford, United States marshal as aforesaid, had in his office in the town of Muskogee, in said Northern district of the Indian Territory, A. A. McDonald, his duly appointed and acting chief deputy marshal, who was, in the absence of said United States marshal from his office, fully authorized to act for and in the room and stead of said United States marshal, Rutherford, and to do and perform all the duties pertaining to the office of United States marshal. That on the day and date last aforesaid, in the absence of said defendant Samuel M. Rutherford, United States marshal as aforesaid, from his office in said town of Muskogee, complaint was made to his said chief deputy marshal, A. A. McDonald, at his office in said Town of Muskogee, by Dave Purty, of said Northern district of the Indian Terrritory, of his having had some horses stolen from him by a man by the name of Flave Carver, and that said horse thief was then in the vicinity of said town of Muskogee; and thereupon said chief deputy marshal, A. A. McDonald, went to the office of the United States commissioner in said town of Muskogee to obtain a writ for the arrest of said horse thief, Flave Carver, but the commissioner was absent from his office, and no writ was obtained; and thereupon, on the same day, said chief deputy marshal, A. A. McDonald, at the suggestion and request of James M. Givens, the assistant United States attorney in and for said Northern district of

(25)

the Indian Territory, sought for Dave Adams, a duly appointed and acting deputy marshal in and for said Northern district, Indian Territory, and found him at his house in said town of Muskogee, and then and there made known to him that there was reasonable ground to believe that Flave Carver had committed the crime of 'horse larceny' (a high felony), and it was believed the horse thief, Flave Carver, was then in the vicinity of said town of Muskogee, and he, the said chief deputy marshal aforesaid, wanted said deputy marshal, Adams, to go with said Dave Purty and arrest said horse thief, Flave Carver; and said chief deputy marshal, A. A. McDonald, then and there requested the said deputy marshal, Adams, to meet him and Purty on that evening in a store room next door to the post office, in said town of Muskogee. After leaving Deputy Marshal Adams' residence, and before the meeting at the store, said chief deputy marshal, A. A. McDonald, furnished said Purty with a double-barrel shotgun, and also loaded shells, loaded with BB shot, or small-sized buckshot; and then, on their meeting said deputy marshal, Adams, about 8 o'clock on the evening of the same day, at said store next door to the post office, the said deputy marshal, Adams, refused to go or to undertake to arrest the horse thief, Flave Carver, with no one but Purty to go with him; and thereupon said chief deputy marshal, A. A. McDonald, got Joseph N. Walker to get his gun and go with said deputy marshal, Adams, and said Purty, to arrest said horse thief, Flave Carver; and immediately thereafter, to-wit, about 8 o'clock on the evening of August 8, 1895, said deputy marshal, Adams, with the said Walker and Purty, started from said store, which was on Main street, in said town of Muskogee, to try to find and arrest said horse thief, Flave Carver. They went from said store up to the Missouri, Kansas & Texas Stock Yards, in said town of Muskogee, and there the said deputy marshal, Adams, got two other possemen, namely, Joseph Hayes and

Richard Brame, to go with him, and assist in finding and
arresting said horse thief, Flave Carver. From said stock
yards said deputy marshal, Adams, and his then posse of
four men, started and went on the west side of a switch of
the Missouri, Kansas & Texas Railway Company, and, when
they had reached the north part of the said town of Musko-
gee, they crossed from the west side to the east side of said
switch, and just at that time, to-wit, between 8 and 9 o'clock,
in the evening of the 8th day of August, 1895, the plaintiff
was walking with a lady in the north end of Cherokee
street, in said town of Muskogee, and while so walking, the
said deputy marshal, Dave Adams, and his posse of four
men, all of whom were seeking the horse thief, Flave Car-
ver, came up stealthily to within some 20 or 30 steps of the
plaintiff and the lady with whom he was walking, and with-
out making any proclamation of their character and their
purpose, and without the exercise of reasonable diligence,
or any diligence whatever, to ascertain whether or not the
plaintiff was the horse thief, Flave Carver, they were seek-
ing, some one of them simply called out, 'Hey, there!' and
the plaintiff and the lady stopped for a moment, and, in
answer to an inquiry made by the lady, the plaintiff ex-
pressed it as his opinion that they were boys in the grass;
and, when the plaintiff and the lady had walked but a few
steps further on, the same call 'Hey, ther.!' was made by
some one of the deputy marshal's posse, and the plaintiff
then stopped, and as he was turning around said deputy
marshal or his posseman, or some one of them, fired upon,
shot, and severely wounded the plaintiff with leaden bullets
or shot in the left side of his head and face, also in his left
shoulder, left arm, and in his back; they supposing him to
be the horse thief, Flave Carver. Fifth. That, by reason
of said wounds, the plaintiff was sick and confined to his bed
for a long space of time, to-wit, some seventeen or twenty
days, and while he was so sick and confined to his bed by

reason of said wounds he suffered great bodily pain and mental anguish, and he was compelled to and did pay out large sums of money for nursing, doctor's bills, and medicines in attempting to heal and cure himself of said wounds and injuries, to-wit, the sum of two hundred and fifty-seven and 50-100 dollars. Sixth. He says that quite a number of said shot and leaden bullets with which he was shot and wounded are still in his body, and that he is thereby permanently injured; and there are at least two of said shot or leaden bullets still in plaintiff's head, which the plaintiff's surgeon was unable to extract, and which may, as the plaintiff is advised by his surgeon, cause him serious trouble in the future; that, by reason of the wounds and injuries in the plaintiff's left arm as aforesaid, the same has become and is paralyzed to such an extent that it is almost useless; and that there are others of said shot or leaden bullets in plaintiff's body, which may, as he is informed by his medical adviser, give him serious trouble in the future. By reason of all which the plaintiff says he has been permanently injured to his damage twenty-five thousand dollars. Wherefore he prays judgment for twenty-five thousand two hundred and fifty-seven and 50-100 dollars; and all other proper relief. Denison & Maxey and Shackleford & Shackleford, Attorneys for Plaintiff. "

To which said amended complaint appellees filed a demurrer as follows: "Come now the defendants, and file this their demurrer to the second paragraph of plaintiff's complaint, and for ground for said demurrer say that the same does not constitute a cause of action against the defendants or either of them. Stuart, Lewis & Gordon, Hutchings & English, Attorneys for Defendants."

On the 16th day of November, 1897, said demurrer to said amended answer [complaint] was sustained by the court.

On the 16th day of November, 1897, by leave of the

court, the answer filed to the first paragraph of the complaint was withdrawn, and the demurrer heretofore filed to the second paragraph of the complaint was filed as to the entire complaint, and sustained by the court. A motion for a new trial was filed by appellant, and overruled by the court. Whereupon the court gave judgment in favor of the appellees against the appellant for costs, etc.

Appellant assigns as error the following: "(1) The court erred in sustaining the demurrer to the second paragraph of the plaintiff's complaint. (2) The court erred in permitting defendants to withdraw their answer to the first paragraph or original complaint, and file their demurrer thereto. (3) The court erred in sustaining said demurrer to the first paragraph of the plaintiff's complaint. (4) The court erred in overruling plaintiff's motion for a new trial."

*N. B. Maxey* and *J. M. Shackleford*, for appellant.

*C. B. Stuart* and *Wm. T. Hutchings*, for appellees.

THOMAS, J. The facts set out in the complaint being admitted by the demurrer, the only question of importance in this case is, do the facts entitle the appellant to recover? The other assignments of error will be disposed of by the decision of this one question.

The whole case is stated in the amended or second paragraph of the complaint, and is substantially as follows: First. That appellant was a resident of the Northern district of the Indian Territory, and not a member of any nation or tribe of Indians. Second. That the appellees Rutherford, Turner, Robb, and Blackstone are residents of the Northern district of the Indian Territory, that Lankford is a resident of the Central district of the Indian Territory, and that Sparks and Williams are residents of the state of

Arkansas. Third. That Rutherford was the duly appointed, qualified, and acting United States marshal for the Northern district of the Indian Territory, and that the other appellees were the sureties upon the official bond of the said Rutherford, as United States marshal aforesaid. Fourth. That on the 8th day of August, 1895, said United States marshal had in his office in the town of Muskogee, Indian Territory, one A. A. McDonald, as his duly appointed and acting chief deputy marshal, who, in the absence of said marshal, was fully authorized to act for and instead of Rutherford, the marshal, and to do and perform all the duties pertaining to the office of United States marshal. That on the 8th day of August, 1895, Rutherford, the marshal, was absent from his office in the town of Muskogee. That during his absence complaint was made by one Dave Purty to Chief Deputy Marshal McDonald of his (Purty) having had some horses stolen from him by one Flave Carver, and that said horse thief was then in said town of Muskogee. That Deputy Marshal McDonald went to the office of the United States commissioner in Muskogee for the purpose of obtaining a writ for said Carver, but, the commissioner being absent, no writ was obtained. That thereupon Chief Deputy Marshal McDonald, at the suggestion of the assistant United States district attorney for the Northern district of the Indian Territory, informed Dave Adams, one of Marshal Rutherford's deputy marshals, that there was reasonable ground to believe that Flave Carver had committed the crime of "horse larceny," and that it was believed that said Carver was then in the vicinity of the town of Muskogee. That Chief Deputy Marshal McDonald requested Deputy Marshal Adams to go with Dave Purty and arrest said horse thief, Carver. That Deputy McDonald arranged with Adams to meet him that night at a point near the post office in Muskogee. That Chief Deputy Marshal McDonald furnished Purty with a double-barrel shotgun,

and shells loaded with BB or small-sized buckshot, That, upon Adams meeting the chief deputy marshal near the post office at the time appointed, Adams refused to undertake the arrest of Carver with Purty alone to assist him. That thereupon Deputy Marshal McDonald "got Joseph N. Walker to get his gun and go with said deputy marshal and said Purty to arrest said Carver." That neither the said deputy marshals nor the possemen had either a writ or other process for the said alleged horse thief. A start was made from the store near the post office in Muskogee, the searching party going up to the Missouri, Kansas & Texas Stock Yards in Muskogee, and there Deputy Marshal Adams secured two other possemen, Joseph Hayes and Richard Brame, to go with him and assist in finding and arresting said Carver. That Adams with his then posse of four men, crossed over the said Missouri, Kansas & Texas Railroad to the north end of Cherokee street, in Muskogee, where the appellant was walking along said street with a young lady. That Adams and his four possemen slipped stealthily up to within 20 or 30 steps of appellant and the lady with whom he was walking, and that without making announcement or proclamation of their character and purpose, without using reasonable diligence or any diligence whatever to ascertain whether the appellant was or was not Flave Carver, whom they were seeking to arrest, some one of the party called out, "Hey, there!" whereupon the appellant and the lady stopped for a moment, but, hearing no further call, proceeded on their way for a few steps, when some one of Deputy Marshal Adams' party again called out, "Hey, there!" The appellant stopped, and as he was turning around to see who it was, or for what purpose he was being called, not knowing whether or not he was the party challenged, some one of Deputy Marshal Adams' party fired upon and severely wounded the appellant with leaden bullets or shot, the appellant being wounded in the head, face, left shoulder,

left arm, and back. That appellant was fired upon by Deputy Marshal Adams or some one of his posse while under the impression that appellant was the alleged horse thief, Carver. That by reason of his wounds appellant was confined to his bed from 17 to 20 days. That during such confinement he suffered great bodily pain and mental anguish from said wounds. That he was compelled to pay out and expend large sums of money for nursing, doctor's bills, and medicines in attempting to heal and cure himself of said wounds and injuries, and that the money so laid out and expended amounted to $257.50. That quite a number of the shot or bullets with which he was wounded are still in his body, and that he is thereby permanently injured. That two of said bullets are still in the appellant's head, so lodged as to make it impossible to extract them, causing appellant to not only suffer seriously at present, but to apprehend serious trouble in the future. That, by reason of the wounds so received, the left arm of the appellant has become and is paralyzed to such an extent as to be practically useless. That the leaden shot or bullets still in appellant's body are liable to give him serious trouble in future,—by reason of all of which the appellant claims to have been damaged in the sum of $25,000.

There is no allegation in the complaint that Rutherford, the marshal, was present, knew of the expedition, or had in any way authorized it. The complaint does not allege that the possemen, or either of them, were ordered by Dave Adams, the deputy marshal, to fire upon appellant, nor is there any allegation that the firing upon the appellant was by the direction or under the authority of said Deputy Marshal Adams. The record in this case shows that the appellant was in no way connected with said larceny or said alleged horse thief, Carver, nor was he at the time charged with the commission of any crime, but, being a

resident of Muskogee, was walking along the streets in company with a lady, as he might lawfully do.

That the appellant was wrongfully and unlawfully assaulted and wounded by some one, and that he suffered most grievous injuries by reason of such wrongful and unlawful assault cannot be questioned, and, if the law does not furnish him a complete remedy for his injuries and damages, it is woefully lacking in that protection which is constitutionally guaranteed to every citizen of the United States. But the innocent may not be made to suffer for the wrongs of the negligent and guilty. ''It is unquestionably true,'' as declared by the supreme court of the United States in the case of Rogers vs Marshal, 1 Wall. 644-654, ''that a marshal is answerable for the misconduct of his deputy.'' Still he cannot be held responsible for the illegal acts of said deputy, or of possemen acting under a deputy, unless such acts are performed at his instance or by his direction. The complaint shows that Marshal Rutherford was neither present at the time complaint was made by Purty to Chief Deputy McDonald that his horses had been stolen, nor did he know of or direct the organization of the posse, the search for the alleged horse thief, Carver, nor the shooting of the appellant.

In a well considered opinion by Justice Burford, of the supreme court of Oklahoma, in the case of Dysart vs Lurty, 41 Pac. 724, et seq., it is held that ''where an officer, while doing an act within the limits of his official authority, exercises such authority improperly, or exceeds his official powers, or abuses an official discretion vested in him, he becomes liable on his official bond to the person injured; but when he acts without any process, and without the authority of his office, in doing such act, he is not to be considered an officer, but a personal trespasser. The weight of authority seems to support the doctrine that sureties on an officia

bond are only answerable for the acts of their principal while engaged in the performance of some duty imposed upon him by law, or for an omission to perform such duty." Difficulty often arises in determining whether an officer acting officially exceeds his authority, or whether his acts must be regarded as those of an individual.

In the case of Lammen vs Feusier, 111 U. S. 17, 4 Sup. Ct. 286, the supreme court of the United States held the United States marshal liable on his bond upon seizing the property of one upon a writ of attachment issued against the property of another. This case would seem to support the doctrine that an officer will be held liable for acts done colore officii, but the case only follows the weight of authority, which is practically unanimous that an officer who, in attempting to execute a valid writ, levies upon the property of a third person, will be held liable for his acts. He is then acting officially, under process apparently valid, and exceeding his authority, rather than acting without any authority. This case is not in conflict with the ruling of the supreme court of Kentucky in Com. vs Cole, 7 B. Mon. 250, wherein it was held that sureties on a constable's bond could not be held liable for money collected under false pretense of having executions in his hands, when in fact he had no such executions. In the latter case the officer was not acting officially, nor within the authority of his office, and his bondsmen had not undertaken to be responsible for his personal conduct.

The general rule seems to be that if a deputy is acting under a writ of process, and while attempting to execute the process he exceeds his authority and commits a wrong, or fails to perform the duty imposed upon him, his principal and the principal's sureties shall be liable for any damages arising from such acts or omissions, or if he is acting without process, and under the orders and instructions or with

the assent of his superior, then the principal and sureties are liable. On the other hand, if the deputy assumes to act without process or without the knowledge or assent of his principal, and performs unauthorized acts or commits a wrong, whether negligently or maliciously, he will be liable for a personal trespass, but his principal and the bondsmen of the principal are not liable. There are some exceptions to, and modifications of, these general rules, but, as general principles, they are in harmony with the weight of adjudicated cases. Where an officer, though he assumes to act as such, commits a wrong under circumstances where the law does not impose upon him any duty to act at all, the wrong is not a violation of any official duty, and consequently is not embraced within the sponsorship of the surety. See Hawkins vs Thomas, (Ind. App.) 29 N. E. 157.

The search for the alleged horse thief, Carver, by Deputy Adams and his possemen, was without a writ, and without any instruction from, or knowledge of, his principal, Rutherford, and the shooting and wounding of the appellant by the deputy marshal or one of his possemen was not in the discharge of any duty imposed upon them by law, and was simply a most flagrant and outrageous personal trespass, for which the assailant or assailants should have been indicted and punished; but Marshal Rutherford and the sureties on his bond are not, under the law, responsible for such unlawful and unwarranted assault made by Deputy Adams and his possemen upon the appellant. The demurrer to said complaint was properly sustained, and the decision of the lower court is therefore affirmed.

CLAYTON and TOWNSEND, J. J., concur.