Schloss *v.* White.

---

## SCHLOSS *et al* v. WHITE *et al.*

On appeal, a judgment by default will be reversed, unless the record show service on the defendant, or appearance, though possibly a judgment so obtained could not be impeached collaterally.

Cases cited.

Plaintiff sued out an attachment against K., and the Sheriff levied it on certain goods. Other creditors issued attachments, which were levied by the Sheriff on the same goods. Plaintiff then dismissed his attachment, and sued the

Sheriff in replevin, claiming that K. obtained a portion of the goods of plaintiff by fraud. Instead of taking the goods out of the Sheriff's possession, plaintiff made an arrangement with the Sheriff, whereby he agreed to sell the goods, and keep the proceeds to answer any judgment plaintiff might obtain in his replevin suit. Sheriff sold the goods, paid the money into Court, saying nothing about this arrangement, and the money was paid, by order of Court, on the claims of the other creditors. The sureties of the Sheriff had nothing to do with, and gave no sanction to the arrangement. Plaintiff had judgment in replevin: *Held,* that the sureties on the Sheriff's official bond are not liable to plaintiff for the goods or the money received from the sale—this agreement between him and plaintiff being no part of the Sheriff's official duty; that the Sheriff, as such, had no legal authority to sell these goods and to hold the money on bailment for plaintiff; and that, in so far as plaintiff trusted the Sheriff with the goods, and authorized him to sell them, he became the agent of plaintiff, and must be looked to as such.

Sureties on the Sheriff's official bond in this State, stipulate for his official, not his personal dealings, and are entitled to stand on the precise terms of their contract.

APPEAL from the Sixth District.

The suit was against the Sheriff, White, and his seven sureties, as to two of whom the record does not show any service, and they made no appearance. Some of them demurred, on the ground that the complaint did not state facts sufficient to constitute a cause of action. Demurrer overruled, answer filed, and the case submitted on the facts stated in the opinion. Judgment was rendered against all of the defendants, who appeal.

*Robinson, Beatty & Heacock,* for Appellants.

1. The record does not show service on two of the defendants, nor appearance by them, and hence the judgment being against all the defendants jointly, must be reversed. (*Treat* v. *McCall & Brady,* 10 Cal. 511.)

2. The sureties of the Sheriff's official bond are not bound to pay money, which became payable by a voluntary arrangement between the Sheriff and plaintiffs in regard to a matter not strictly pertaining to his duty as Sheriff. (Burge on Suretyship, 206; *Mayhew* v. *Pickett,* 2 Swanst. 185; *Smith* v. *Knox,* 3 Esp. 47; *Williams* v. *Price,* 1 Sim. & Stu. 581.)

*Heydenfeldt,* for Respondent.

1. It is not affirmatively shown that Barr and Selby, two of the defendants, were not served with process, and the Court below would

Schloss *v.* White.

not have rendered judgment against them unless they had been before it. All intendments must be made to support the judgment of a Court of general jurisdiction. In *Treat* v. *McCall* (10 Cal.) the record showed that the defendant was not served. But the authorities are numerous to sustain the jurisdiction where the want of it does not affirmatively appear. (*Hart* v. *Seixas*, 21 Wend. 40; *Huntington* v. *Charlotte*, 15 Vt. 50; *Foot* v. *Stevens*, 17 Wend. 484; *Granger* v. *Clark*, 22 Me. 128; *Woodbrough* v. *Perkins*, 1 Bibb. 288.)

If, however, this supposed want of service be error, it is error only as to the parties not served; and as the assignment of error is joint, if it be bad as to some, it is bad as to all.

Again: the judgment can only be reversed as to the parties not served. (8 Texas, 140; 1 Williams, Vt. 245.)

2. As to the agreement between plaintiff and Sheriff, this agreement contains three propositions:

1st. That plaintiff would not take the goods from the Sheriff in his action of replevin.

Now the seizure by the Sheriff is the wrongful act which entitled plaintiff to his action.

In this action the statute gives an additional remedy to the one at common law. It allows a recaption of the goods by the plaintiff, if he gives bond and security; but he is not compelled to do so; he can bring his action as at common law; the statute privilege he is at liberty to waive, and that is all the plaintiff did or could do in this case, and his doing so cannot be construed as waiving any other right. The fact that he had already given the bond, does not necessarily compel him to proceed further with his statute remedy; the bond would probably stand as a security to the Sheriff for costs, and that places him in a better position than if no bond was given. The agreement, therefore, to this extent, was a mere waiver of the statute proceedings, which plaintiff was not bound to pursue.

2d. That the Sheriff might sell the goods.

This, in strict sense, was no agreement whatever, but a mere recitation of what would have to take place by due course of law. The Sheriff held the goods under attachments; they were perishable property; he could not sell without a writ or order of Court previously obtained, and such order was obtained and the goods sold under it.

This recitation was only made so as to reach the third proposition, which was the real and only agreement between the parties—that if the

Schloss *v.* White.

Sheriff would sell these goods, and in doing so keep a separate account of their price, then plaintiff would only hold him liable for the amount they actually sold for.

3rd. This last agreement was so clearly for the benefit of the Sheriff, it is unnecessary to argue it. It limited his liability, and that of his sureties, to the amount he would receive in cash.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This was a suit brought on a Sheriff's bond against the officer and his sureties. It seems that two of his sureties, Selby and Barr, were not served with process. The respondent contends that the mere failure of the record to show service on a defendant, is not matter for reversal, since, in a Court of general jurisdiction, the regularity of its proceedings is presumed. Some authorities are cited to sustain this view. But our practice has been different. While possibly, a judgment so obtained might not be impeached collaterally, (though see *Parsons* v. *Davis*, 3 Cal. 421) yet on appeal a judgment by default will be reversed, when the record shows no service of notice, and no appearance by the defendant. (2 Cal. 88; 10 Id. 511; 3 Id. Sup.) See also *Whitwell* v. *Barbier* (7 Id. 64) and cases cited on the briefs.

For this error the judgment must be reversed. ^

We are asked to pass upon the question involved in the record, which is presented by an agreed statement of facts.

It seems that plaintiff sued out attachment against one Kalkmann, and had it levied on some goods. Other creditors issued similar process, also levied on the same goods. Afterwards the plaintiff dismissed his proceeding, and claimed that the goods levied on, or a part of them, were his own property; they having been procured by Kalkmann by false pretenses. The plaintiff sued the Sheriff in replevin. He did not take the goods out of the Sheriff's possession, but came to an arrangement with the Sheriff, whereby the Sheriff agreed to sell the goods, and keep the proceeds to answer the judgment, if the plaintiff obtained one in his replevin suit. The Sheriff sold the goods and paid the money into Court, saying nothing about this arrangement; and the money was paid, under the order of the Court, on the claim of the other creditors. The sureties of the Sheriff had nothing to do with, and gave no sanction to this arrangement. The question is, are they bound to the plaintiff for the goods or the money received from the sale—the plaintiff having ob-

tained judgment in the replevin suit?  We think they are not.  it was no part of the Sheriff's duty to make this agreement with the plaintiff to sell the goods and to hold the proceeds for the plaintiff in a certain event.  He had no legal authority, as Sheriff, to sell these goods and to hold the money on bailment for the plaintiff.  If the plaintiff trusted him with the custody of the goods, and gave him authority to sell them, he became, so far, the agent of the plaintiff, and the plaintiff must look to him merely as his agent; he cannot hold the sureties bound for executory contracts of this sort, entered into without their consent.  If so, there would be scarcely a limit to their responsibility; for contracts of this sort might run for years, and represent every variety of complication.  If the Sheriff had retained the goods, he might have obtained a bond of indemnity from the other creditors; or if the plaintiff had given bond, he might have relieved the Sheriff from the custody of the goods. But here the Sheriff assumes, by this agency, a responsibility for himself and his sureties, greater in degree and different in kind, from that imposed by law, and it would be unjust and impolitic to encourage such dealings by holding sureties responsible for them.  It would be against law so to hold, for the sureties are entitled to stand upon the precise terms of their contract, by which they stipulated in this case for the official, not the personal dealings of their principal.  (Burge on Suretyship.)

Judgment reversed and cause remanded.