Filed Jan. 19, 1892.

---

No. 258.

## HAWKINS ET AL. v. THOMAS.

UNITED STATES MARSHALS.—*Official Bond.*—*Action Upon.*—*Measure of Liability.*—*Liability of Principal and Surety Identical.*—Where an officer is sued officially upon the bond he gave for the performance of his official duty, that instrument must clearly furnish the measure of his liability, and in such an action his liability is identically the same as that of his sureties.

SAME.—*Bond.*—*Liability of Sureties.*—*Appointment of Special Deputy.*—*Liability of Deputy.*—*Instructions to Jury.*—*Complaint.*—An action was instituted against a United States marshal and the sureties upon his official bond as United States marshal, and a special election deputy appointed by him, to recover damages for the alleged unlawful arrest and imprisonment of the plaintiff.

*Held,* that the complaint did not state a cause of action against the special deputy; that he did not sign the bond and was not answerable for its breach.

*Held,* also, that the complaint failed to state a cause of action against the sureties on the bond, it not being shown that the injury complained of was the result of official misconduct, the averment in the complaint that the marshal and his alleged deputy were acting illegally, but under cover of office, not being sufficient.

*Held,* also, that an instruction was erroneous which denied the right of the marshal, when sued upon his official bond, to deny that he had any authority to appoint a special deputy in the given instance.

SAME.—*Extent of Surety's Liability.*—The engagement of a surety upon an official bond extends only to official acts—acts done by virtue of the trust reposed in the officer by law. But where an officer, though he

assumes to act as such, commits a wrong under circumstances where the law does not impose upon him any duty to act at all, the wrong is not a violation of any ófficial duty, and is consequently not embraced within the sponsorship of the surety.

SAME.—*Appointment of Election Deputy.*— *Void Appointment.*—An appointment by a United States marshal of a special deputy marshal to serve at an election is void if the appointment is in a town or city having a population of less than 20,000. See section 2021, Revised Statutes U. S.

SAME —*Misconduct of Special Deputies.*—The statute making a United States marshal liable for the conduct of his deputies applies only to general deputies. He is not answerable for the misconduct of special deputies if he exercise due care in their selection.

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellants.

*J. B. McFadden* and *H. Dailey,* for appellee.

CRUMPACKER, J.—James C. Thomas sued Edward Hawkins upon his official bond as United States marshal for the district of Indiana, and Alford Isaacs, individually, to recover damages for the alleged unlawful arrest and imprisonment of the plaintiff.

There are two paragraphs of complaint, the first of which charges generally that Hawkins was duly appointed United States marshal for the district of Indiana, and gave his bond conditioned for the faithful discharge of the duties of said office, in the sum of twenty thousand dollars, with his co-defendants, John H. Organ, Henry E. Wadsworth, Leroy D. Webber, Ellis Michael, Simon Wile, Fitch D. Bowen, Mortimer Nye and William A. Martin as sureties thereon, a copy of which was filed with and made part of the complaint.

It is further alleged that said Hawkins " procured and directed " the defendant Alford Isaacs to act for him as such marshal on the 6th day of November, 1888, at the city of Shelbyville, Indiana, and while so acting as a deputy United States marshal, by virtue of the authority given him by the said Hawkins said Isaacs, " with force and arms unlawfully

assaulted the plaintiff, and with great force and violence pulled and dragged him from the court-house yard in said city, where a large number of persons were then congregated, and from thence the plaintiff was forcibly taken by the said Isaacs, without authority of law, on and along the public streets of said city," for the distance of half a mile, to the office of a United States commissioner, at which place the said Isaacs, " under color of his said authority from the said Hawkins," unlawfully imprisoned the plaintiff for one hour; and thence said Isaacs, under said appointment and by direction of said Hawkins, compelled plaintiff to go in his custody to the jail of Shelby county, where he was unlawfully incarcerated and restrained of his liberty for four hours. Whereby he was damaged, etc.

The second paragraph of complaint is substantially the same as the first, except it charges that the trespass was committed by Hawkins " with the aid and assistance of the defendant Isaacs."

Each defendant severally demurred to the complaint for want of sufficient facts to state a cause of action. The demurrers were overruled and exceptions entered, whereupon the defendants filed an answer consisting of three paragraphs. A demurrer was sustained to the third paragraph, and plaintiff replied to the others, and the issues thus joined were tried by a jury.

A verdict was returned in favor of the plaintiff. The defendants moved for a new trial, which was denied, and judgment was rendered upon the verdict.

The first question for consideration arises upon the demurrer to the complaint, and in the determination of this question it must be kept in mind that the action is upon the official bond of the marshal, and is *ex contractu* in form. *Moore* v. *State, ex rel.,* 114 Ind. 414; *State, ex rel.,* v. *Dixon,* 80 Ind. 150.

This being the character of the action, it was incumbent upon the appellee to allege and prove a breach of some duty imposed by the terms of the bond.    While an officer may be individually liable for any and all wrongs committed by him, yet when he is sued officially upon the bond he gave for the performance of his official duty, that instrument must clearly furnish the measure of his liability, and in such an action his liability is identically the same as that of his sureties. *Bowers* v. *Fleming,* 67 Ind. 541 ; *State* v. *Givan,* 45 Ind. 267.

These observations lead to the conclusion at the outset that the complaint states no cause of action against the appellant Isaacs.    He did not sign the bond, and is not answerable for its breach.

There is a lack of uniformity in the decisions of the courts of last resort in this country respecting the extent to which sureties are held accountable upon an official bond for the principal's wrongs.    They are in harmony, however, upon the general proposition, that such liability must be strictly construed in favor of the surety.    This is upon the theory that the surety assumes responsibility from motives of friendship or patriotism, and without compensation ; so his obligation is strictly a legal one, and should not be extended beyond the exact terms of his engagement.    Thus in the case of *Detroit Savings Bank* v. *Ziegler,* 49 Mich. 157, the court, by Cooley, J., said : " The sureties upon an official bond undertake for nothing which is not within the letter of their contract.    The obligation is *strictissimi juris;* and nothing is to be taken by construction against the obligors.    They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent."    See further upon this subject ; *Miller* v. *Stewart,* 9 Wheat. 680 ; *Leggett* v. *Humphreys,* 21 How. 76 ; *Urmston* v. *State,* 73 Ind. 175.

This doctrine should be given a reasonable application, and should not be extended so far as to materially impair

official security, or to encourage irresponsible conduct upon the part of public functionaries.

United States marshals are ministerial officers, and their duties and liabilities are substantially the same as those of sheriffs and constables in their respective spheres. Section 783, Revised Statutes U. S.; *Servis* v. *Marsh*, 38 Fed. Rep. 794; *Hagood* v. *Blythe*, 37 Fed. Rep. 249.

The courts are quite generally in accord in this country and England upon the proposition that the engagement of a surety upon an official bond extends only to official acts—acts done by virtue of the trust reposed in the officer by law. Considerable confusion seems to exist among the adjudications relative to acts designated *virtute officii* and those classed as *colore officii*, some holding that the liability of the surety is limited to the former, and others holding that it extends to both classes. But an examination of the leading cases upon the subject will reveal that the conflict exists rather in the application and use of the terms than the principles enunciated.

The case of *Alcock* v. *Andrews*, 2 Esp. 542, was an action against a constable for false imprisonment. The defendant pleaded justification under a statute protecting constables while in the performance of official duty. In passing upon the question as to what constituted an official act, LORD KENYON said: "It had been often held that a constable acting *colore officii* was not protected by the statute, where the act committed is of such a nature that the office gives him no authority to do it. In the doing of that act he is not to be considered as an officer; but where a man, doing an act within the limits of his official authority, exercises that authority improperly, or abuses the discretion placed in him, to such cases the statute extends. The distinction is between the extent and the abuse of the authority."

In *State* v. *Conover*, 38 N. J. L. 230, relative to official bonds, the court said: "The sureties do not bind themselves

to protect the public against every act of their principal, nor do they become his sureties to keep the peace."

That a surety upon an official bond is only answerable for the acts of his principal while engaged in the performance of some duty imposed upon him by law is generally admitted. *Waymire* v. *State, ex rel.,* 80 Ind. 67 ; *Bowers* v. *Fleming, supra ; Governor* v. *Perrine,* 23 Ala. 807 ; *Commonwealth* v. *Swope,* 45 Pa. St. 535 ; *Griffith* v. *Commonwealth,* 10 Bush, 281 ; *Dorr* v. *Mickley,* 16 Minn. 20 ; *Huffman* v. *Koppelkom,* 8 Neb. 344 ; *State* v. *Mann,* 21 Wis. 692 ; *Turner* v. *Collier,* 4 Heisk. 89 ; *Thomas* v. *Browder,* 33 Texas, 783 ; *Boston* v. *Moore,* 3 Allen, 126 ; *Schloss* v. *White,* 16 Cal. 65 ; *Brown* v. *Mosely,* 11 Sm. & M. 354 ; *State* v. *Brown,* 11 Iredell (N. C.), 141 ; *People* v. *Pennock,* 60 N. Y. 421 ; *People, ex rel.,* v. *Schuyler,* 4 N. Y. 173 ; *State.* v. *White,* 10 Rich. (S. C.) 442.

Difficulty arises sometimes in determining whether an officer acts officially or whether his acts must be regarded as those of the individual.

In the case of *Lammon* v. *Feusier,* 111 U. S. 17, the Supreme Court of the United States held a United States marshal liable upon his bond for seizing the property of one upon a writ of attachment issued against the property of another.

In the case of *State, ex rel.,* v. *White,* 88 Ind. 587, the same principle was applied under substantially similar circumstances.

These cases are unquestionably in harmony with a large majority of the decisions upon that subject, and in each of them the unauthorized act of the officer is characterized as *colore officii.* But the officer was acting under a valid writ, and by virtue of the mandate of the law, and the trespass consisted in an abuse of the power vested in him, and not in the performance of an act which the law did not enjoin upon him at all.

It was an instance of *exceeded,* rather than *usurped* power.

Such acts are within the express line of the sureties under-taking—that his principal shall faithfully discharge the *duties* of his office according to law. But where an officer, though he assumes to act as such, commits a wrong under circumstances where the law does not impose upon him any duty to act at all, the. wrong is not a violation of any *official duty*, and consequently is not embraced within the sponsorship of the surety.

It has been repeatedly decided by the Supreme Court of this State that where money is paid to a county clerk, though paid to and received by him in fact as such, yet, if the law did not authorize him to receive the money, he is not liable on his bond for. its misappropriation. *Scott* v. *State, ex rel.,* 46 Ind. 203; *Crews* v. *Ross,* 44 Ind. 481 ; *Carey* v. *State,* 34 Ind. 105; *Jenkins* v. *Lemonds,* 29 Ind. 294.

The case of *Dœpfner* v. *State, ex rel.,* 36 Ind. 111, was an action for false imprisonment against a justice of the peace upon his official bond for unlawfully committing a constable to jail for the failure to levy an execution within the time prescribed by law. The justice assumed to act in his official capacity in committing the constable, but the court held the action would not lie on the bond, saying in the course of the opinion : "A majority of the court are of the opinion that the justice of the peace had no jurisdiction or power to cause the arrest and imprisonment of the constable ; that it was an act for which, as justice of the peace, he had no legal authority whatever ; and, therefore, as the security is only bound that he shall faithfully discharge his duties as justice of the peace, and as this was not a duty which he did or could legally do as a justice of the peace, that the surety is not responsible, and that the demurrer to the complaint should have been sustained."

Where a sheriff or constable collects money upon an execution after return day, and the writ has become *functus officio*, or collects without any process at all, it seems that he is not. liable upon his bond for the wrongful conversion of such money. *Thomas* v. *Browder, supra; Dean* v. *Governor,*

13 Ala. 526; *Forward* v. *Marsh*, 18 Ala. 645; *People, etc.,* v. *Foster*, 133 Ill. 496; *United States* v. *Cranston*, 3 Cranch, (C. C.) 289; *State* v. *Mann, supra.*

The case of *United States* v. *Cranston, supra,* was an action upon a constable's bond to recover money collected by him upon a note which he took for collection and receipted for as constable. The court held there was no liability in that form of action, saying: "He (the constable) is only liable officially, for money officially collected; that is, upon legal process."

In the case of *Hollman* v. *Carroll*, 27 Tex. 23, it was held that while a sheriff is liable officially for seizing the property of one person under an execution against another, he is not so liable for seizing such property without any writ at all.

In the case of *Eaton* v. *Kelly*, 72 N. C. 110, the facts were these: The sheriff represented that he had an execution authorizing him to sell certain real estate, and assumed to sell the same thereunder in regular manner at the court-house door. An attendant at the sale, relying upon the sheriff's representations concerning his authority, purchased the property and paid for it. In fact the sheriff had no execution, and the sale was void, and the purchaser sued him upon his bond to recover the money paid by him. The court held that the sheriff acted without authority of law in selling the property, and the wrong could not be redressed in an action upon his bond.

This principle was applied under somewhat similar circumstances in the cases of *Kendall* v. *Aleshire*, 28 Neb. 707; *Jewell* v. *Mills*, 3 Bush, 62, and *Clinton* v. *Nelson*, 2 Utah, 284.

Thus it is seen that official acts, as applied to the conduct of ministerial officers, are only such as are done in the execution of some legal process or of some positive command of the law. It follows as a logical sequence that in an action upon an official bond it is necessary to allege and prove the existence of conditions and circumstances requiring some

official action on the part of the officer, and that the injury sought to be redressed was inflicted while the officer was so attempting to act, or on account of his failure to act at all.

In the complaint in the case before us, the only allegation upon this subject is the general averment that the marshal and his alleged deputy were acting illegally, but under color of office. It does not appear that any writ or process of any kind had issued to either of them, or that any offence had been committed against the Federal laws, or that they ever claimed such to be the case. The averment that the officer was acting under color of authority is a mere conclusion, and is not sufficient to show that the injury resulted from an official act.

It was so decided in *Commonwealth* v. *Cole*, 7 B. Mon. 250, and in speaking of the legal effect of such general averment the court said : " It is a mere statement of legal conclusions or inferences, without the facts on which they are founded, and was properly adjudged insufficient."

So, in our own State, the rules of pleading require that facts be particularly alleged which show that the injury complained of was the result of official misconduct. *State, ex rel.,* v. *Shackleford,* 15 Ind. 376 ; *Major* v. *State, ex rel.,* 8 Blackf. 71 ; *Jones* v. *State, ex rel.,* 5 Blackf. 492.

Indeed, an examination of the many cases decided by our Supreme Court upon the question of official responsibility shows the uniform practice to be, to specifically plead facts imposing a duty upon the officer to act, as furnishing the only basis of the liability of the surety.

The demurrer ought to have been sustained to both paragraphs of complaint.

Another error complained of by the appellants was the giving of the following instruction :

" It was not proper for the plaintiff at the time of the alleged arrest to contest the authority of the defendant, Hawkins to appoint said Isaacs as his deputy, and to that end to resist the pretended officer in making such arrest. It

was his duty to yield to the authority that was attempted to be exercised over him, and if you find from the evidence in the case that the defendant Hawkins undertook to appoint and constitute said Isaacs as his deputy United States marshal, it will not be available for such officer now to deny that he had authority to make such appointment, but as between himself and the plaintiff in this case, the legality of said appointment must remain unquestioned."

There was evidence tending to show that Hawkins undertook to appoint Isaacs a special deputy marshal at the city of Shelbyville, to assist the election supervisor at the general election on the 6th day of November, 1888, and while acting as such officer Isaacs made the arrest complained of. There was also evidence of a telegraphic correspondence between Isaacs and Hawkins, in which the latter gave some directions concerning the custody and examination of the appellee while under arrest.

We have noted that the liability of Hawkins and his sureties is the same in this case, because it is fixed by the same instrument, viz., the bond. The instruction quoted is inconsistent with the conclusion reached by us in passing upon the sufficiency of the complaint. The appellants, being on trial for *official* misconduct, had the right to insist that the action complained of was wholly without authority of law, and void. The instruction would have been applicable had the action been against Hawkins individually for the alleged trespass, for there his liability would not have been limited to official misconduct, and the element of estoppel suggested in the instruction would have been pertinent.

Other questions arise upon this instruction, and, as they are also presented elsewhere in the record, in the interest of brevity we will consider them in this connection.

The only authority for the appointment of special deputy marshals to serve at elections is conferred by section 2021, Revised Statutes U. S. This section authorizes such appointments only at elections at which representatives to Congress

are chosen, and only in cities and towns having a population of 20,000 or more. Courts take judicial notice of the population of cities and towns according to the authorized census reports, and therefore we know that Shelbyville had less than half the requisite number of inhabitants for the appointment of election deputy marshals.

Hawkins had no authority whatever to make the appointment in question, and such appointment was void, and conferred no power upon the appointee to make arrests or perform any other official duties.

United States marshals are authorized to appoint general deputies to assist them in the performance of the duties of the marshal's office, and by express provisions of the statute the marshal is made liable upon his bond for the official misconduct of such deputies. These deputies are subject to the direction and control of their superior; they perform duties imposed by law upon him ; the fees for their services belong to him; they depend upon him for their compensation, and are responsible to him for their misconduct, so, in the absence of a statutory liability, by every principle that underlies official responsibility, the doctrine of *respondeat superior* would apply. *Wallace* v. *Douglass,* 103 N. C. 19 ; *Gorham* v. *Gale,* 7 Cowen, 739 ; *Moulton* v. *Norton,* 5 Barb. 286.

But these reasons do not apply to election deputies. It is true, they are appointed by the marshal, but the duty to appoint them when the conditions concur is imperative.

They must be voters of the city or town in which they are appointed, and it is their duty to aid and assist election supervisors, to keep the peace at the polls and prevent fraud, and they have power to make arrests for violations of the Federal law committed in their presence. The marshal receives no fee or reward for their services. Their compensation is paid by the government, and their accounts are audited and certified by the United States Circuit or District Judge. Their oaths are filed with the chief supervisor of elections, and their duties are special and public, and are

imposed upon them directly by the law. The statute making the marshal liable for the conduct of his deputies applies only to the general deputies, and there is not a single reason for holding him responsible for the conduct of special deputies, except the bare fact that they are appointed by him. These latter functionaries are special peace officers, whose duties are wholly public, and they alone are responsible for their misconduct. *Ex Parte Morrill*, 35 Fed. Rep. 261.

The mere fact that a superior officer is charged with the duty of appointing a subaltern or deputy for the performance of a public duty does not make him answerable for the misconduct of such appointee. *Robertson* v. *Sichel*, 127 U. S. 507; *Keenan* v. *Southworth*, 110 Mass. 474; *Conwell* v. *Voorhees*, 13 Ohio, 523; *Ely* v. *Parsons*, 55 Conn. 83; *Canterbury* v. *Attorney General*, 1 Phillips, 306.

While these cases predicate the non-liability of the superior officer upon the ground that the duty of the appointee is of a public nature, they sufficiently illustrate the principle that there must be something more in the relation of the officer and the subaltern, or deputy, than the naked power of appointment and removal.

Our conclusion is that a marshal is not answerable for the misconduct of special deputies if he exercises due care in their selection.

The judgment is reversed, with instructions to sustain the demurrer to the complaint.

Filed Nov. 10, 1891; petition for a rehearing overruled Jan. 9, 1892.