STATE EX REL. PENROD *v.* FRENCH, SHERIFF, ET AL.

[No. 27,903. Filed December 20, 1943. Rehearing denied January 17, 1944.]

146

*James S. Shepard,* of Montpelier, and *Moran & Abromson,* of Portland, for appellant.

*Hugh E. Reynolds* and *Slaymaker, Merrill & Locke,* all of Indianapolis, *Simmons & Simmons,* of Bluffton, and *Robert L. Smith,* of Portland, for appellees.

SWAIM, J.—The appellant, Ascie Penrod, filed an action on the official sheriff's bond, executed by Fleming

French, as principal, and by the Hartford Accident and Indemnity Company of Hartford, Connecticut, as surety. In the amended complaint Fleming French was named defendant both as sheriff of Wells County, Indiana, and in his individual capacity. On the plaintiff's motion the action was dismissed against French as an individual, leaving French in his official capacity as sheriff, and the Indemnity Company as the only defendants.

The separate demurrers of French, as sheriff, and of the Indemnity Company to the amended complaint were sustained and the plaintiff failed and refused to plead further. Judgment was rendered in favor of the defendants.

The action of the court in sustaining these two demurrers were the only errors relied on by the appellant. Each of the demurrers was predicated on the ground that the amended complaint did not state facts sufficient to constitute a cause of action against these two appellees.

The appellees insist that the allegations of said amended complaint, as to the arrest of the appellant and his imprisonment, show that French and his deputy, Lantis, were acting as individuals and not as officers; and that, therefore, their acts were not covered by said bond.

The complaint alleged that during all of the times mentioned in said complaint the said Lantis served and acted as a deputy sheriff of said Wells County for and on behalf of said French as the sheriff of said county; that said Lantis, on May 5, 1937, while serving and acting by virtue of his office as such deputy sheriff, unlawfully arrested the appellant in Blackford County, Indiana, and placed him in a jail in said county; that about three hours later said deputy took the appellant from said jail, transported him by automobile to the

jail at Bluffton, in said Wells County, which jail was in the care and custody of Fleming French, as sheriff; that the appellant was unlawfully incarcerated in said Wells County jail until noon of May 7, 1937, with the knowledge and consent of said sheriff and while said sheriff was acting by virtue of his said office; that on May 7, 1937, said sheriff and said deputy sheriff, while acting by virtue of their respective offices, unlawfully forced the appellant to go to Indianapolis, Indiana, where he was unlawfully compelled by said deputy sheriff to undergo and submit to a lie detector test; that the said sheriff and his deputy "after they took relator to the city of Indianapolis for said lie detector examination discovered that he was not guilty of any crime" and then released him. That no charge had been placed against the appellant "before or after his said unlawful arrest or incarceration, either by a grand jury or by affidavit and that his seizure and incarceration was without probable cause; that relator had not committed any public offense . . . ;" that during the time he was unlawfully held and incarcerated in the Wells County jail said sheriff "while acting by virtue of his office" permitted said cell and jail to become damp, chilly and cold and as a result of said condition the appellant suffered injuries, all of which was well known by said sheriff. That the appellant, by reason of the unlawful acts, performance, conduct and behavior of said sheriff and deputy sheriff "all of which were in violation of and breach of the conditions of said bond" was damaged in the sum of $5,000.00. The prayer of the complaint was for a judgment against the appellees and each of them in the sum of $5,000.00.

All of the parties have apparently assumed that the liability of the two appellees on the bond was the same; that if the demurrer was correctly sustained as to one,

it was correctly sustained as to the other. With this theory we cannot agree.

Fleming French, in his capacity as sheriff of Wells County, could not be liable on the sheriff's bond. He as an individual executed this bond as principal to guarantee that he would faithfully discharge his duties as sheriff.

The bond constituted a contract between him as an individual and the State for the benefit of any one who might suffer damage by reason of his failure to faithfully discharge his duties as sheriff. His breach of the conditions of the bond could only result in liability against him in his individual capacity, not against him in his official capacity as sheriff. A judgment for damages against him in his capacity as sheriff would amount to a judgment against the office and the funds of the office. He might be sued as sheriff, that is in his official capacity, to recover property which he held as sheriff, but for any official nonfeasance, misfeasance or malfeasance he could only be sued as an individual. This is true whether the action be a tort action or an action on his bond. The confusion as to the proper party in such a case as this has probably arisen by statements found in our decisions and in our textbooks where we speak of suing a sheriff or other public officer on his official bond. By such language, however, it was only intended to indicate the individual to be sued and not the capacity in which he is to be sued. Since French, in his capacity as sheriff of Wells County, could not be liable on his official bond, it follows that said complaint did not state facts sufficient to constitute a cause of action against him as sheriff and his demurrer was, therefore, properly sustained.

On the demurrer of the Indemnity Company we have a much more serious question. It is stated in the appel-

lee's brief that the Indemnity Company filed its motion to require the appellant to make his amended complaint more specific and that such motion was overruled by the court. Neither the motion nor the substance thereof is set out in any of the briefs and under our rules we are unable to consider said motion. Without this motion to make more specific before us we must determine the question of the sufficiency of the complaint pursuant to § 2-1005, Burns' 1933, § 155, Baldwin's 1934, which provides that all conclusions stated in such a complaint shall be considered and held to be the allegation of all the facts required to sustain said conclusions when the same are necessary to the sufficiency of the complaint. Acting pursuant to this statute we may exclude from our consideration only conclusions of law.

The bond here in question was conditioned that the said French should "faithfully perform and discharge his duties as such sheriff : . ." By statute, § 49-2802, Burns' 1933, § 5494, Baldwin's 1934, it is provided that a sheriff "shall be a conservator of the peace within his county; shall arrest, without process, all persons who, within his view, shall commit any crime or misdemeanor, take them before the nearest justice of the peace of the county and detain them in custody until the cause of such arrest has been investigated; . . . pursue and commit to the jail of the county all felons; . . . take care of the jail and the prisoners therein, . . . " Section 13-1004, Burns' 1933, § 13453, Baldwin's 1934, provides that "The sheriff of the county, by himself or deputy, shall keep the jail, and shall be responsible for the manner in which the same is kept. . . . and he shall provide proper meat, drink and fuel for prisoners, if they have no other convenient way of supplying themselves." Section 49-2804, Burns' 1933,

§ 5496, Baldwin's 1934, provides that such sheriff may appoint deputies and shall be responsible for their actions as such. Section 9-1024, Burns' 1933, § 2157, Baldwin's 1934, provides that peace officers, including sheriffs and their deputies may arrest and detain any person found violating any law of this State, until a legal warrant can be obtained.

It is conceded by all parties that the bond upon which this action is predicated covered only such acts of Fleming and Lantis as they performed as sheriff and as deputy sheriff, respectively. It could not cover any tort which they as individuals committed on the appellant. The complaint alleges that all of the acts with reference to the arrest and imprisonment of the appellant were done while French "was acting by virtue of his office as sheriff of Wells County and as a peace officer" and while Lantis "was acting by virtue of his office as deputy sheriff of Wells County and as a peace officer."

The appellees insist that the specific facts alleged in said complaint show that neither the sheriff nor his deputy were in the performance of any official duty imposed upon them by law; and contend that their acts were therefore their individual acts.

The first case upon which the appellees rely, *Hawkins* v. *Thomas* (1891), 3 Ind. App. 399, 409, 406, 407, 29 N. E. 157, was a suit by Thomas against Hawkins upon the latter's official bond as United States marshal to recover damages for the alleged unlawful arrest and imprisonment of Thomas by one Isaacs, who had been appointed a deputy by Hawkins. The opinion contained a rather exhaustive discussion of the question of liability on official bonds and held that in that case the marshal was not liable on his bond for the acts of said deputy. The facts of that case, however, are dif-

ferent from the facts in the instant case. There, according to the opinion, "Hawkins had no authority whatever to make the appointment in question (the appointment of the deputy) and such appointment was void, and conferred no power upon the appointee to make arrests or perform any other official duties." The opinion also shows that the deputy in question was not a general deputy but a special election deputy and the court concluded that even if the appointment had been valid "a marshal is not answerable for the misconduct of special deputies if he exercises due care in their selection."

In the instant case the deputy was properly appointed; at the times in question was acting as such deputy; and, by statute, § 49-2804, Burns' 1933, § 5496, Baldwin's 1934, the sheriff appointing deputies is made responsible "for their acts as such."

In the Hawkins case, *supra,* the court reviewed and discussed many early cases considering the question of when an officer is acting officially to the extent of constituting liability against the sureties on his official bond and concluded, "Thus it is seen that official acts, as applied to the conduct of ministerial officers, are only such as are done in the execution of some legal process or of some positive command of the law." In arriving at this conclusion the Indiana cases relied on by the Appellate Court were, for the most part, cases where a county official had received money which the law did not authorize him to receive as such county official and had embezzled the same. It seems to us that there is a clear distinction between that class of cases and the instant case.

In the Hawkins case the court also stated that "It does not appear that any writ or process of any kind had issued to either of them, or that any offense had

been committed against the Federal laws, or that they ever claimed such to be the case. The averment that the officer was acting under color of authority is a mere conclusion, and is not sufficient to show that the injury resulted from an official act." It is to be noted that this opinion was written before the enactment of § 2-1005, Burns' 1933, § 155 Baldwin's 1934, which requires that all conclusions stated in a pleading shall be considered and held to be allegations of the facts required to sustain said conclusions when the same are necessary to the sufficiency of the pleading.

The appellees also rely on *State ex rel. Abdiehl* v. *Sriver et al.* (1936), 210 Ind. 129, 1 N. E. (2d) 579. In that case this court held that there was no liability on the official bond of a patrolman of the City of South Bend in favor of a third person alleging that he had been wrongfully attacked by a patrolman. We there said "The statute limited the obligation of faithful performance to the city. There is no indication in the statute nor in the bond that it is the intent or purpose to make the policeman and his surety liable upon the bond for torts committed upon a stranger to the contract. . . . Where such liability has been upheld it is based upon some statute or ordinance expressly providing for liability due a third person." In the instant case the bond in question was given pursuant to a statute which expressly provided for liability thereon for the benefit of third persons injured by a breach of the conditions of the bond.

Our attention has not been called to any decision of this court which would require the strict construction of the bond contended for by the appellees. The courts of last resort of some other estates have held that a peace officer making an arrest, without a warrant, for a crime not committed in his presence and without prob-

able cause and without reasonable belief that the person arrested was guilty of a crime, is acting individually and not in his official capacity and that, therefore, he is not liable on his bond.

In *Jones* v. *Van Bever* (1915), 164 Ky. 80, 174 S. W. 795, a demurrer was held to have been properly sustained to a complaint which alleged that the arrest was made by two deputies "in their official capacity" as deputy sheriffs but which also alleged that the arrest was made "without warrant or process from any court and without reason to believe that plaintiff had committed a felony, and when he had committed no offense in their presence . . . " In so holding the court stated the manner in which a sheriff was authorized to make an arrest and then said, "If he makes an arrest in any other way, it is not authorized by law, and is consequently his individual and not his official act." In reaching this conclusion one of the cases relied upon by the Supreme Court of Kentucky was *Hawkins* v. *Thomas, supra.* We believe this construction of what constitutes an official act by a sheriff or other peace officer is too narrow. If the sheriff, in making an arrest, is following the statute, the arrest would be legal and would entail no liability against the sheriff either personally or upon his bond. If he is acting only as an individual and not as sheriff whenever he exceeds his authority in making an arrest, there could never be liability on his bond for a false arrest.

In 47 Am. Jur. § 125, p. 908, in speaking of liability on the bond for general acts of the sheriff, it is said:

"Some courts have refused to predicate liability upon the authority of the officer to do a particular act, for the reason that the basis of liability in every instance is want of authority, whether exercised under process or not. It is said to be rather incongruous that the rule should be relaxed in so

far as the liability of an officer's sureties are con- cerned, where the officer goes to the extreme of act- ing in an apparently official capacity without any process whatever. The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? If he as- sumed to act as an officer—whether under valid or void process, or under no process whatever— bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such. They should not be absolved from liability for reasons which if carried to their logical extreme would make them responsible only for legal or authorized acts (where of course there is no liability) and excuse them from liability where acts are in excess of or apart from his authority— the very acts which they are supposed to assure against and which constitute the only logical con- tingency for entering upon their obligation as sure- ties. Under such a test as this, it is clear that the distinctions drawn out at interminable length in the authorities as between acts virtue officii and acts colore officii would be deemed of little if any use in practice, inasmuch as, from their very nature, they are mere argumentations in a circle."

We can see no valid reason why this test should not be a valid test for determining whether an officer, in making an arrest, is acting in his official capacity in such a manner as to entail liability on his official bond.

The above quotation from Am. Jur. is followed by § 126, p. 909, of said text on the subject of "Unlawful Arrest" in which, after pointing out the conflict in the authorities on the question of liability on a sheriff's bond for an unlawful arrest, it is said:

"Liability in some cases has been held dependent upon whether the act was done by virtue of office or under color of office. In the former the sureties are always held liable, but under the latter view some difference of opinion exists. The present

tendency, however, seems to be to hold the sureties liable where an act is done either by virtue of or under color of office."

Vol. 1, Anderson on Sheriffs, § 48, pp. 42, 43, has the following to say on this subject:

. "There is a definite split of authority as to the liability of bondsmen of a sheriff for acts which are done under color of office but not by virtue of office. It may be stated without question that for all of the acts done by virtue of office by the sheriff himself or through a subaltern, the sheriff and his sureties are liable on his bond. However, the trend seems to be to discard this distinction that the sheriff is liable only for acts done by virtue of office. . . .

"The abolition of this arbitrary rule doubtless promotes justice, and bottoms the rule on a surer, and sounder, basis."

In § 62, p. 57, of the same text, in speaking of the liability for the acts of deputies, it is said:

"At common law the sheriff is not responsible for an act done by his deputy colore officii. The weight of authority seems to be now that the sheriff is liable not only for acts virtue officii but also for acts colore officii. However, there is substantial authority for position restricting liability of the sheriff for acts of his deputies only when done by virtue of his office and not by color of office."

In *Booton* v. *Napier* (1939), 121 W. Va. 548, 5 S. E. (2d) 441, the Supreme Court of West Virginia held "we hold that any official who assumes to act as such, and who acts within the general scope of the powers and duties of his position, acts under color of office; even though his act is one beyond his actual legal authority, and that he and the surety on his bond are liable therefor. To hold otherwise would be to clothe men with the authority of the state, and permit them, under such

authority, to invade the rights of citizens, and then defend, so far as their official bond is involved, on the ground that they overstepped and abused the authority intrusted to them by the state." For similar holdings see *Clancy* v. *Kenworthy et al.* (1887), 74 Iowa 740, 35 N. W. 427; *Abbott* v. *Cooper et al.* (1933), 218 Cal. 425, 23 P. (2d) 1027; *American Guaranty Co.* v. *McNiece* (1924), 111 Ohio St. 532, 146 N. E. 77; *Greenius* v. *American Surety Co.* (1916), 92 Wash. 401, 159 P. 384; *Lee* v. *Charmley* (1910), 20 N. D. 570, 129 N. W. 448.

In *Clancy* v. *Kenworthy, et al supra,* the court said:

"But it is insisted that, as the constable is shown to have had no lawful authority to arrest plaintiff, his act was therefore not done in the line of his duty. In truth his act was in the line—direction—of his official duty, but was illegal because it was in excess of his duty. In the discharge of official functions he violated his duty, and oppressed the plaintiff. This is all there is of it. If, in exercising the functions of his office, defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of oppression result in trespasses or wrongs. For lawful acts in discharge of his duty he of course is not liable. It follows that, if defendant's position be sound, no action can be maintained upon the bond in any case. In support of our conclusions, see *Tieman* v. *How,* 49 Iowa 312."

In *Abbott* v. *Cooper et al, supra,* in answer to the contention that the action of the deputy sheriff was so flagrantly unauthorized and unlawful that he was not acting under color of his office the court said, "We can not subscribe to this doctrine, as it would tend to excuse or mitigate the wrongful acts of the officer if said acts were accompanied by unusual acts of oppres-

sion or amounted to a flagrant abuse of official duty, and penalize the offender only when his acts were less culpable."

In *Lee* v. *Charmley, supra,* a deputy sheriff, falsely claiming to be acting under a warrant, went to a person's house at night and arrested the person. The person arrested had committed no crime and the deputy sheriff had no reasonable ground for believing him guilty of any crime. The court there held that there was liability on the bond of the deputy sheriff, saying, "In such character he was authorized to make the arrest if provided with a warrant, or without in case he had reasonable cause for believing that Brown had committed a felony. He pretended to have such authority, and intimidated, as we may presume, by such pretense, Brown without resistance submitted to arrest and to being held in custody. Charmley's official insignia was the means by which he was enabled to accomplish the wrongful act. It may safely be assumed that had he gone at such time and under such circumstances as a private citizen he would have met with immediate resistance. He abused authority derived wholly from the fact that he held the office of deputy sheriff. An act so performed by a public officer seems to us clearly to have been done under color of office within any accepted definition of that term."

The appellees in the instant case contend that since the original arrest of the appellant was beyond the boundaries of the county, such arrest was clearly not an official act; and that the return of the appellant, under arrest, to the jail in Wells County and his imprisonment there was such a continuation of the original arrest as to make the entire treatment of the appellant the individual act of the sheriff and his deputy. With this contention we cannot agree.

In the first place we do not agree that the arrest here, which was alleged to have been made by the deputy, while serving and acting as such, can ■■ be conclusively said to have been the individual act of the deputy merely because it was made beyond the boundaries of the county. It is true that in the absence of statute the power of a sheriff and his deputy is limited to their county. Under our statutes, however, a sheriff is expressly given powers to make an arrest in certain cases beyond the limits of his own county. § 9-1008 and § 9-1011, Burns' 1933, § 2145 and § 2158, Baldwin's 1934. Can an arrest under color of office made beyond the borders of the county, but not made pursuant to statute, be distinguished from any other unlawful arrest made under color of office?

In *American Guaranty Co.* v. *McNiece, supra,* an action was brought on the official bonds of city officials of the City of Cambridge, Ohio, for acts done outside of the limits of said city. The sureties on the bonds insisted that since the acts were done outside of the territorial jurisdiction of the officers and without power or sanction of law, the acts were not covered by the contracts of suretyship. The bonds there were also conditioned that the officers should faithfully perform the duties of their respective offices. The Supreme Court of Ohio said that it was bound by prior decisions to the theory that sureties on an official bond are liable not only for the wrongful acts of their principals, perpetrated by virtue of their offices, but also for wrongful acts of the principals done under color of their offices. In holding the sureties liable in that case the court said:

"A majority of the court are of opinion that when a court once reaches the conclusion that the

sureties are liable on a bond for the faithful performance of the duties of their principal for any wrongful act done colore officii, that any distinction between various wrongful acts done colore officii is artifiicial and illogical."

Continuing, after reviewing decisions in which sureties were held liable for wrongful acts of the principal done under color of office, the court said further:

". . . the same reasoning which required the holding in those cases would require the holding that the bondsmen of an official upon a bond conditioned for the faithful performance of the duties of his office obligate themselves, not only that the official will faithfully perform the duties which his office imposes on him to perform, but also that he will not under color of his office exceed the powers which the office confers on him; that if it obligates the bondsmen to respond in damages for injuries caused by the official exceeding the powers which the office confers upon him in certain situations, it must necessarily obligate them to respond in damages for injuries caused by his exceeding the powers which the office confers on him in every case where the injury is perpetrated under color of office, and injury results therefrom. . . .

"In the instant case the wrongful acts done would have been wrongful had they been perpetrated in the city of Cambridge, and since the jury found they were perpetrated colore officii, it makes no difference where they were committed. . . ."

We believe that reasoning is sound; that the sureties on a sheriff's bond should be held liable for an unlawful arrest made under color of office even though the arrest is made beyond the boundaries of the county. We can imagine unlawful acts by a sheriff outside of his territorial jurisdiction where the acts are so clearly out of the general line or direction of his official duties that they could not be said to be done under color of

office. In such a case the sheriff would be acting as an individual and there would be no liability for such acts on his official bond.

But if we could say in the instant case that the arrest of the appellant, made outside of the sheriff's territorial jurisdiction, was the individual act of the deputy, it would not follow that the acts perpetrated in Wells County were, therefore, also individual acts and not done under color of office.

In *Shirley* v. *McDonald* (1929), 220 Ala. 50, 124 So. 104, the surety on a sheriff's bond was held liable, where, although an unlawful arrest by the sheriff's deputy was made in another county, the complaint showed "the continuance of such unlawful arrest" in the sheriff's county. In *Kendall* v. *Aleshire* (1890), 28 Neb. 707, 45 N. W. 167, the sureties on a sheriff's bond were held liable for the unlawful detention and imprisonment of a prisoner within the state, although the court there held that the prisoner's arrest by the sheriff beyond the boundaries of the state was the act of an individual "without either the virtue of office or the color of office," and not binding on the sureties on his bond.

So, in the instant case, the unlawful arrest continued into Wells County and it was there that appellant was unlawfully imprisoned in the county jail which, according to the allegations of the complaint, was permitted to become so damp, chilly and cold that appellant suffered injuries therefrom. All of this was done, at least under color of office, and, therefore, constituted acts which were covered by the sheriff's bond.

We are of the opinion that the demurrer of the Indemnity Company to the amended complaint should have been overruled.

The judgment is reversed as to the Hartford Accident and Indemnity Company of Hartford, Connecticut, with instructions to the trial court to overrule the demurrer of said Indemnity Company to said amended complaint and for further proceedings consistent with this opinion.

NOTE.—Reported in 51 N. E. (2d) 858.