## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 17 2015, 8:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Louis Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 17, 2015

Court of Appeals Case No.
34A02-1405-CR-372

Appeal from the Howard Superior Court.
The Honorable William C. Menges, Judge.
Cause No. 34D01-1101-FD-85

**Baker, Judge.**

[1] Louis Davis appeals his convictions for Receiving Stolen Property,[1] a class D felony, and Possession of Marijuana,[2] a class D felony. Davis argues that the trial court erred in admitting certain evidence and in permitting the State to strike a juror during voir dire. Finding no error, we affirm.

## Facts

[2] On January 6, 2011, Julie and Everett Vice's home in Marion was burglarized. Among the items stolen were three guitars. Grant County detectives began investigating and soon discovered ads on Craigslist advertising the stolen guitars.

[3] The Grant Circuit Court issued subpoenas to obtain the email addresses associated with the ads and the subscriber information associated with the email addresses. An ad for one of the stolen guitars was connected to an email address and phone number belonging to Davis. The Craigslist ads were also connected to an address in Kokomo, which is in Howard County.

[4] On January 28, 2011, Grant County Detectives Erin Keppeler and Shelby Taylor went to the Kokomo address and knocked on the door. Davis answered the door and spoke with the detectives. He told the detectives that the apartment belonged to his brother and his brother's girlfriend and that he could not consent to a search. He also told them that he had not seen any guitars in

---

[1] Ind. Code § 35-43-4-2.

[2] Ind. Code § 35-48-4-11.

the apartment. While Davis spoke, Detective Keppeler noticed that the interior paint and trim of the apartment matched what was in the background of the pictures of the guitars on Craigslist.

[5] The detectives left and sat in an unmarked van while they applied for a search warrant. After about fifteen minutes, a woman arrived at the apartment. A few minutes after her arrival, she exited the apartment with Davis. She was carrying a safe and Davis was carrying a laptop computer. The detectives approached them and asked Davis if they could check the serial number on the laptop, to which Davis consented. The laptop's serial number came back as stolen.

[6] The detectives then called Kokomo Police for assistance. When they arrived, the officers noticed that Davis's shirt was sticking out, as though Davis was wearing a bullet proof vest. The officers asked Davis if he had anything under his shirt, and Davis responded that he had a guitar. Davis lifted up his shirt and removed the Gibson guitar that had appeared in the Craigslist ad. The body of the guitar had been against his chest and the neck of the guitar had been down one of his pant legs.

[7] Davis was placed under arrest. The officers looked inside Davis's backpack and found approximately ninety-nine grams of marijuana and a digital scale. The officers subsequently obtained a search warrant for the apartment. During the execution of the search, Detective Taylor took a photograph of the paint and trim of the apartment.

The State charged Davis with class D felony receiving stolen property, class D felony dealing in marijuana, and class D felony possession of marijuana. During voir dire the State struck a Black juror. Davis, who is also Black, challenged the strike under *Batson v. Kentucky*, in which the United States Supreme Court held that purposeful racial discrimination in jury selection violates a defendant's equal protection rights. 476 U.S. 79, 86 (1986). The trial court denied Davis's challenge.

A jury trial began on March 28, 2014. During trial, Davis objected to the admission of evidence obtained as a result of the search of the apartment, arguing that the search was illegal. Davis argued that, although the officers had obtained a search warrant, the warrant was invalid because the State was unable to find the affidavit that was submitted to support the issuance of the warrant. The trial court denied this motion.

Davis also objected to Detective Keppeler's testimony regarding anything she had learned in response to the subpoenas. Davis argued that the subpoenas were invalid because they cited a repealed statute and were signed by a circuit court judge rather than a superior court judge. The trial court overruled Davis's objection.

The jury found Davis guilty of receiving stolen property and possession of marijuana but not guilty of dealing in marijuana. On April 30, 2014, the trial court sentenced Davis to three-year concurrent sentences for the two convictions. Davis now appeals.

# Discussion and Decision

## I. Admission of Evidence

[12] We first address Davis's arguments regarding the trial court's decision to admit certain evidence over his objections. Decisions regarding the admission of evidence are left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review such decisions for an abuse of discretion and we will reverse only when admission is clearly against the logic and effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Id.*

[13] Davis first argues that the search of the apartment was illegal because it was based on a defective search warrant and, therefore, Detective Taylor's photograph of the paint and trim of the apartment should have been suppressed. He argues that the warrant was defective because the State failed to supply a copy of the affidavit supporting the issuance of the warrant.

[14] In response to Davis's objection at trial, the trial court noted that Davis was simply a visitor in the apartment and, therefore, lacked standing to challenge the search. Tr. p. 122. We agree. To have standing to challenge a search under the Indiana Constitution,[3] "a defendant must establish ownership,

---

[3] Davis does not specify whether his argument is founded on Article I, Section 11 of our State's constitution or the Fourth Amendment to the United States Constitution. The analyses differ, with the Indiana Constitution providing arguably broader protection—protecting searches of possessions over which one claims ownership irrespective of the place where the possessions were found. *Campos v. State*, 885 N.E.2d

control, possession, or interest in either the premises searched or the property seized." *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996). The record shows that Davis was only visiting the apartment. Tr. p. 123-25. On appeal, Davis does not argue that he had ownership, control, possession, or interest in the apartment. Furthermore, the only evidence admitted relating to the search was a photograph showing the paint and trim of the apartment. Tr. p. 113-14. Davis certainly had no interest in the paint and trim of the apartment, ownership or otherwise. Consequently, Davis had no standing to challenge the admission of this evidence.

[15] Davis next argues that the detectives had no right to investigate the apartment because it was in Howard County and the detectives worked in Grant County. Accordingly, Davis argues for the suppression of all evidence discovered as a result of the detectives' investigation of the Kokomo apartment.

[16] Davis claims that the detectives' "operational jurisdiction [was] limited to the geographical boundaries of Grant County." Appellant's Br. p. 6. In support of this contention, Davis cites *State ex rel. Penrod v. French*, 222 Ind. 145, 51 N.E.2d 858 (Ind. 1943). However, if anything, *French* supports the opposite conclusion.

[17] In *French*, the plaintiff alleged that a sheriff and his deputy unlawfully arrested him and transported him to a different county where he was held in a jail cell

---

590, 598 (Ind. 2008). However, because Davis asserts neither an expectation of privacy in the apartment nor an ownership interest in any objects searched, he would lack standing under either analysis.

without charge and forced to submit to a lie detector test. *Id.* at 148-49, 51 N.E.2d at 859. The plaintiff sued the sheriff on an official sheriff's bond, which served as an insurance policy for the State in case anyone suffered damages as a result of the sheriff's misconduct. An indemnity company that acted as a surety on the bond argued that it only had the responsibility to pay if the sheriff was acting in his official capacity. The indemnity company argued that the sheriff could not have been acting in his official capacity because he arrested the plaintiff outside of the county in which he served. Our Supreme Court disagreed, noting:

> It is true that in the absence of statute the power of a sheriff and his deputy is limited to their county. Under our statutes, however, a sheriff is expressly given power to make an arrest in certain cases beyond the limits of his own county.

*Id.* at 160, 51 N.E.2d at 863-64.

[18] It is always the case that law enforcement officers' powers are limited *in the absence of statute*, as the Indiana Code is the very source of their powers. But it is important to note that there was no such absence in *French*, as then-existing provisions of our Code specifically allowed a sheriff from one county to go into another county to execute an arrest warrant. *See* Secs. 9-1001, 9-1010, Burns' 1933.

[19] An officer's power to arrest is presently outlined in Indiana Code section 35-33-1-1:

(a)     A law enforcement officer[4] may arrest a person when the officer has:

(1)     A warrant commanding that the person be arrested;

(2)     probable cause to believe the person has committed or attempted to commit, or is committing or attempting to commit, a felony . . .

The section goes on to enumerate more instances in which an officer may arrest a person without limiting that authority based on geographical location. Accordingly, Indiana courts have found that a law enforcement officer's power to arrest is statewide. *Hart v. State*, 671 N.E.2d 420, 425 (Ind. Ct. App. 1996) (". . . Town Marshal's power to arrest and detain a citizen is not limited to the geographic boundaries of his town, but is statewide.") *abrogated on other grounds*, *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007).

[20]     But Davis not only claims that an officer lacks statewide power to arrest. He argues that an officer lacks statewide power to conduct an investigation of any kind. Assuming solely for the sake of argument that officers even need be granted such investigative powers, we find that where officers are given the power to arrest, it necessarily follows that they have the power to investigate in the manner employed by Detectives Keppeler and Taylor. Consequently, Davis has failed to substantiate his claim that the detectives in this case exceeded their authority.

---

[4] Detectives Keppeler and Taylor are sheriff's deputies, Tr. p. 105, 151, and therefore "law enforcement officers" for the purposes of this provision. Ind. Code 35-31.5-2-185.

Davis next argues that the subpoenas issued by the Grant Circuit Court were invalid because the court lacked authority to issue them and also because they listed a repealed statutory citation. In regard to the statutory citation, the subpoenas incorrectly indicated that they were issued pursuant to Indiana Code section 33-14-1-3, which was recodified as Indiana Code section 33-39-1-4 in 2004. P.L. 98-2004. However, the trial court was correct to note that, because the subpoenas need not have listed any statutory citation at all, this minor error could not render them invalid.

As to whether circuit courts have the authority to issue subpoenas, Davis points to Indiana Code section 33-39-1-4:

> When a prosecuting attorney receives information of the commission of a felony or misdemeanor, the prosecuting attorney shall cause process to issue from a court (*except the circuit court*) having jurisdiction to issue the process to the proper officer, directing the officer to subpoena the persons named in the process who are likely to have information concerning the commission of the felony or misdemeanor.

(Emphasis added). In *Percifield v. State*, this Court considered this exception, which has remained in the provision since 1852, and noted:

> [In] 1852, [] the court structure and prosecutorial regime was quite different than now. Given the current structure of the courts and the organization of prosecutors, the exception is an anachronism. When we look at a statute, we presume that the legislature intends its language to be applied in a logical manner consistent with the intent of the statute's underlying policy and goals. The purpose of the statute is to enable prosecutors, not to limit jurisdiction of circuit courts. As our supreme court has held, the main purpose is to provide review by a court to see that a subpoena is warranted by the circumstances and that its scope is appropriate.

***

> We conclude that I.C. § 33–14–1–3 (now I.C. § 33–39–1–4) does not prohibit circuit courts from issuing a subpoena duces tecum.

814 N.E.2d 710, 719-20 (Ind. Ct. App. 2004).  We believe this interpretation is sound, and we decline Davis's invitation to revisit the question.

Moreover, our Code was amended in 2011 and both circuit and superior courts were given "original and concurrent jurisdiction in all civil cases and in all criminal cases."  Ind. Code § 33-28-1-2 (circuit); Ind. Code § 33-29-1-1.5 (superior).  It follows that both courts have the necessary powers to aid them in the exercise of this jurisdiction.  Accordingly, Indiana Code section 33-28-1-5 provides that a circuit court may "issue and direct all processes necessary to the regular execution of the law" to corporations and individuals.  This includes subpoenas.  *See In re Order for Ind. Bell Tel. to Disclose Records*, 274 Ind. 131, 136, 409 N.E.2d 1089, 1092 (Ind. 1980).  In sum, the subpoenas at issue here were valid and the trial court did not err in admitting any evidence obtained by them.

## II.  *Batson* Claim

Davis next argues that the trial court erred in denying his challenge to the State's decision to strike a juror during voir dire.  Davis argues that the State's decision was racially motivated.  "Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous."  *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001).

Davis appears to have objected to the State's decision to strike a Black juror under *Batson v. Kentucky*, 476 U.S. 79, (1986). Appellant's Br. p. 10. In that case, the United States Supreme Court held that purposeful racial discrimination in jury selection violates a defendant's equal protection rights under the Fourteenth Amendment to the United States Constitution. *Batson*, 476 U.S. at 86.

To establish a claim under *Batson*, a defendant must show:

> (1) that the prosecutor used peremptory strikes to remove members of a cognizable racial group from the jury pool; and (2) that the facts and circumstances raise an inference that the prosecutor used those strikes to exclude potential jury members from the jury because of their race.

*Williams v. State*, 700 N.E.2d 784, 786 (Ind. 1998).

Here, Davis has failed to show that the facts and circumstances create an inference that the prosecutor struck the juror because of his race. First, the juror at issue here[5] stated that he believed marijuana should be legal. Tr. p. 51. He then insisted adamantly that he would have to actually see something happen in order to believe that it had happened. The prosecutor presented the juror with a hypothetical regarding what it would take for him to believe that it was raining outside:

---

[5] Although Davis tries to cast doubt as to the identity of the speaker because he is labeled as "unidentified male" in the transcript, it is clear that the juror answering these questions is the Black male that Davis is referring to. *See* Tr. p. 51, 54-55; Appellee's Br. p. 26-27.

| | |
|---|---|
| Prosecutor: | What if I walk in and I'm wet with an umbrella. Would that be enough if I tell you it's raining outside? |
| Juror: | (Inaudible) |
| Prosecutor: | Ok. You'd probably need to hear the rain itself. |
| Juror: | Or see it. |
| Prosecutor: | Or see it. What if everybody else in the room came in and were drenched and you got here earlier (inaudible) everybody tells you it's raining, would that be enough? |
| Juror: | No. |

Tr. p. 54.

[29] From this conversation, the prosecutor could infer that this particular juror would not vote to convict no matter how strong of a case was presented because the juror had not personally witnessed the crime being committed. Thus, the prosecutor had a race-neutral explanation for challenging this particular juror sufficient to overcome any inference that the challenge was racially motivated. *See Brown v. State*, 751 N.E.2d 664, 667-68 (Ind. 2001) (". . . the prosecutor must provide a facially valid explanation for the use of the peremptory challenge and unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") (quotations omitted). Accordingly, the trial court did not err when it denied Davis's challenge.

[30] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.