Morris L. PERCIFIELD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A04–0312–CR–643.

Court of Appeals of Indiana.

Sept. 10, 2004.

Transfer Denied Nov. 4, 2004.

Samuel S. Shapiro, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

In this interlocutory appeal, Morris Percifield appeals the trial court's denial of his motion to suppress. Percifield raises two issues, which we consolidate and restate as whether the trial court abused its discretion by denying Percifield's motion to suppress. We affirm.

The relevant facts follow. On January 18, 2002, Percifield was arrested as part of an investigation into dealing cocaine, and City of Bloomington Police Department Detective Rick Crussen interviewed him as follows:

Crussen: ... Do you remember the rights I told you out there in the street. You have the right to remain silent, anything you say can be used against you in Court, you have the right to talk to a lawyer for advice before answering any questions and have them with you during questioning. If you can't afford one one would be appointed for you before any questioning.

\* \* \* \* \*

Crussen: ... If you decide to answer questions now without a lawyer present you have the right to stop answering at any time.

\* \* \* \* \*

Percifield: Well, let me call an attorney friend of mine.

Crussen: Who's that?

Percifield: He's not in town.

Crussen: Okay. At this point, because we're going to do some other investigation, we've got a couple more of your cohorts involved, if you're going to make a phone call to an attorney I have to bring a phone in here and have you dial the attorney's number out of the phone book. I'm not letting you make any phone calls to anybody besides an attorney.

Percifield: That's fine.

Crussen: Okay. So, if you want to call an attorney . . .

Percifield: I've got the number up here. You can see the number here. It is an attorney.

Crussen: Okay. Who is it?

Percifield: It's Deckard. It'll come up Deckard.

Crussen: Okay. Are they in the phone book or is this . . .

Percifield: Yeah. Indianapolis phone book.

Crussen: Okay. I'll go get an Indianapolis phone book.

Percifield: Yeah.

Crussen: Because if you decide that you'd rather not do anything along those lines . . .

Percifield: And call somebody else?

Crussen: Exactly.

Percifield: No, I'm not going to do that.

Crussen: Because there's somebody else that we know is involved that I don't want you tipping off that . . .

Percifield: I'm not going to do that.

Crussen: . . . with a call. So, I don't have any problem with you contacting an attorney, you know.

\* \* \* \* \*

Okay. Now, I'm straight up with you as long as you're straight up with me. I don't plan on pushing you to try to get you to make statements against other people. You make whatever statements you're comfortable making. We are going to get a Search Warrant for your house since that's where you just left from and we're going to search your house. Is there any more Dope in there that we need to be concerned about?

Percifield: Maybe.

Crussen: How much?

Percifield: Yes, there is.

Crussen: How much are we going to find? Cause the way it works is if you're, if you're straight up with me and say, "Oh, here's what's there and here's where it's at," that saves us hours of having to search, so if we're going to move from you to your connection, the quicker we do this, the less suspicious it looks for everybody involved.

Percifield: Let me, get me an Indianapolis phone book and I'll call my friend first.

Crussen: Okay. Just sit right there. I'll have to . . .

Percifield: Oh, I'm not going anywhere. Obviously. Now, I'll be easy to deal with.

Crussen: I understand, and I don't blame you for wanting to have some idea of what you should do. Just sit tight and I'll be right back.

Appellant's Appendix at 38–45. Later that same day, Detective Kevin Hill sought a warrant to search Percifield's residence. The Monroe Circuit Court held a probable

cause hearing at which Detective Hill testified that:

> Detective Crussen and I have been conducting a cocaine dealing investigation with Morris Percifield and Robert Hardwick as the suspects. Morris Percifield resides at the 811 Winding Way address. On yesterday's date, which would have been the 17th of January, we conducted a controlled buy on approximately a half an ounce of cocaine from this group. And how the deal went down was, the informant did a tape recorded phone call to Morris Percifield's cell phone. He was out of state and he made arrangements to have his what we would call a "runner" drop the drugs off. We made arrangements for the "runner" [to] show up at the informants [sic] house. They didn't meet one another. This person just showed up and put the drugs on the front porch in the barbeque grill. I was standing inside the house and looking out the window when the person arrived. He was identified in that investigation as Robert Hardwick. I have arrested him for dealing cocaine in 1993 and took a conviction on that case. We didn't arrest him that day; we just let him leave. On today's date the informant was to pay the money for that half ounce that she received yesterday to Morris Percifield. And then purchase another half ounce for a total of $1,250 dollars and we called Morris Percifield at his home phone number which is at the address on the search warrant and made arrangements to meet him at the Taco Bell on West Third Street to pay money for yesterday's deal and for the purchase of another half ounce today. That phone call was tape recorded as well. Paul Buckman with D.E.A. was helping us in this investigation and he did surveilance on the house and was watching the house and saw Morris Percifield, or at least an individual matching his description get into the white van that was parked in front of the house and then leave and drive to Taco Bell and meet the informant while we were waiting for him to show up. The informant states that Percifield works for a book company and drives a white van. The white van that was parked in front of the house is registered to some sort of book company, a company vehicle. When he showed up, he did the deal with the informant. She paid him the money. He delivered another half ounce of the substance consistent with cocaine. She left and then turned the cocaine over to me. When he left the parking lot Detective Crussen and Captain Qualters stopped him in his vehicle and took him under arrest and search incident to his arrest and was in possession of our serial number recorded by money. We are currently doing surveillance on the house. Captain Qualters and Paul Buckman with D.E.A. are sitting at the house now. Detective Crussen interviewed Percifield at the jail, or at the Bloomington Police Department. *After he mirandized him, Percifield told him there were more drugs in the house.* When I debriefed the informant, the informant told me that they basically re-upped or resupplied themselves, which makes sense because he was out of state in Pennsylvania. That is what he told the informant yesterday. And his connection is in Indianapolis and he would have to come right down from Indianapolis while coming home yesterday. Due to the fact we did surveillance on him and left his house and went and did a deal and then admitted that were was more drugs in the house, we request that a search warrant be issued for his residence.

*Id.* at 32–34 (emphasis added). The trial court issued the search warrant. On the

same day, the trial court also approved a prosecutor subpoena duces tecum for the subscriber information and all incoming and outgoing calls for Percifield's cellular phone for January 17, 2002, the day of the first controlled buy.

The State charged Percifield with three counts of dealing in cocaine as class A felonies. Percifield filed a motion to suppress: (1) the evidence seized as a result of the search warrant; and (2) his cellular phone records for January 17, 2002. The trial court issued an order denying Percifield's motion. With respect to the denial of the motion to suppress the evidence seized as a result of the search warrant, the order provided that:

\* \* \* \* \*

### Defendant's Statements

The State concedes, necessarily in the Court's judgment, that the first issue raised by [Percifield] is well taken and that [Percifield's] statements made after having said to the police officers, "Well, let me call an attorney friend of mine," must be suppressed.

### Search Warrant

[Percifield] contends (a) that the evidence presented to Judge Bridges was insufficient to establish probable cause for a search warrant if [Percifield's] statements are excluded from consideration and (b) that the fruits of the search warrant should be suppressed because Officer Hill was guilty of bad faith in presenting [Percifield's] statements to the issuing magistrate to obtain the search warrant.

It is not necessary to recite all of the information provided by Officer Hill to Judge Bridges. [Percifield] frames the crux of the issue in his response brief by contending that "the gap in the State's proof is the nexus between the defen-dant's home and the alleged criminal activity that occurs."

It is accurate that no such nexus exists with respect to the first "controlled buy" on January 17, 2002.

The second controlled buy was initiated by a telephone call placed by the informant to [Percifield's] home phone numbers. During that telephone call, which was recorded by the investigating officers, the informant and [Percifield] agreed to meet at the Taco Bell Restaurant on West Third Street in Blooming-ton where the informant was to pay [Percifield] for the cocaine purchased the previous day and where [Percifield] was to sell to the informant an additional half ounce of cocaine. An agent of the Drug Enforcement Administration, who was conducting surveillance of Defendant's home, then observed [Percifield] get into a van parked in front of his residence and drive to the Taco Bell where the second transaction occurred.

There is no gap in the State's proof. The initiating telephone call was placed to [Percifield's] residence. [Percifield] then left his residence and was followed to the Taco Bell where the expected transactions occurred. Additionally, the informant, who had provided information corroborated in all other material respects, advised the police officers that [Percifield] and his alleged associates had just "resupplied" themselves. As all other information provided by the informant, which was substantial, it was reasonable to infer that he/she was "more probably right" about this fact.

\* \* \* \* \*

Excluding the substance of Defendant's statements from consideration, there was probable cause for a warrant to search.

[Percifield] argues that Officer Hill mislead Judge Bridges when he informed the judge that [Percifield], "after being Mirandized," had admitted that there were more illegal substances at his residence. It may be observed that the statement in question was not false. Rather, [Percifield] argues that experienced police officers should have known that the statement was inadmissible against [Percifield] because it was made after he had requested counsel.

Regardless of the merit of that proposition, the Court has concluded that there was probable cause for the warrant to issue even if the statement in question is excluded from consideration. The good faith standard of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not come into play.

*Id.* at 91–92. With respect to the denial of the motion to suppress Percifield's cellular phone records for January 17, 2002, the trial court's order provided that:

\* \* \* \* \*

Justice Sullivan wrote in *Oman v. State* [737 N.E.2d 1131 (Ind.2000) ], that "Indiana prosecutors are statutorily empowered to investigate criminal activity without the aid of a grand jury and may issue subpoenas to gather both testimonial and documentary evidence. See *Ind.Code § 34–14–1–3* (1993). This investigative authority includes the ability to gather documentary evidence maintained by a third party, provided that a trial judge or magistrate first determines the subpoena is reasonable under the Fourth Amendment." [*Id.*] at page 1147. Significantly, he nor any of the other justices attached significance to the "(except circuit courts)" language of the 1852 statute.

Similarly, Chief Justice Givan, writing on behalf of a unanimous court in Indiana Bell, quoted I.C. 33–14–1–3, conspicuously omitting the parenthetical language "(except the circuit court.)" *Supra,* at page 1091.

At least one post–1973 appellate case expressly upheld a subpoena duces tecum issued by a circuit court without even addressing the language in question. *In Re Thompson,* 479 N.E.2d 1344 (Ind.Ct.App. 1st Dist.1985).

The Court concludes that the intent and purpose of I.C. 33–14–1–3 is to provide judicial oversight to insure that a prosecutor's investigative subpoena duces tecum is "sufficiently limited in scope, specific in directive, and relevant in purpose to a valid criminal investigation" (*Oman v. State,* at page 1148) and that circuit courts have not been precluded from exercising that oversight since the enactment of I.C. 35–34–1–1 in 1973.

*Id.* at 93. At Percifield's request, the trial court then certified the order for interlocutory appeal, and we accepted jurisdiction pursuant to Ind. Appellate Rule 14(B).

■ The sole issue is whether the trial court erred by denying Percifield's motion to suppress. Review of the denial of a motion to suppress is similar to other sufficiency matters. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* Percifield argues that the trial court erred by denying his motion to suppress: (1) the evidence seized as a result of the search warrant; and (2) Percifield's cellular phone records. We will address Percifield's arguments separately.

## A.

First, we address whether the trial court erred by denying Percifield's motion to suppress the evidence seized as a result of the search warrant. Percifield argues that because Detectives Crussen and Hill acted in bad faith when seeking the search warrant, all of the evidence seized as a result of the search of his residence should be suppressed. He also argues that assuming arguendo we decline to hold that the detectives' bad faith requires suppression of the evidence and assuming that the trial court did not rely on the tainted admission in issuing the search warrant, there was insufficient probable cause to support the issuance of the search warrant.[1]

Percifield suggests that all the evidence seized as a result of the search of his residence should be suppressed because Detectives Crussen and Hill acted in bad faith by: (1) eliciting an admission from Percifield after he had expressed a desire to speak with counsel; and (2) failing to disclose to the trial court the fact that the admission was tainted. We disagree. To suppress the evidence seized as a result of the warrant would be, even as Percifield suggests, an "extraordinary" remedy. Appellant's Brief at 11. Rather, we will ignore the tainted admission and look to the remaining portion of the probable cause testimony to determine whether there existed the probable cause necessary to issue the search warrant. See Potter v. State, 179 Ind.App. 349, 352, 385 N.E.2d 955, 957–958 (1979) (holding that probable cause existed to support the issuance of the search warrant after omitting a portion of the probable cause affidavit, which should have been excluded from consideration by the trial court).

■ Percifield also argues that even assuming the trial court did not rely on the tainted admission in issuing the search warrant, there was insufficient probable cause to support the issuance of the search warrant. In deciding whether to issue a search warrant, the trial court's role "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Allen v. State, 798 N.E.2d 490, 495 (Ind.Ct.App.2003). The duty of the reviewing court is to determine whether the trial court had a "substantial basis" for concluding that probable cause existed. Id. It is clear that a substantial basis requires the reviewing court, with significant deference to the trial court's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Houser v. State, 678 N.E.2d 95, 99 (Ind.1997).

■ Here, Detective Hill testified that he and Detective Crussen had been conducting a cocaine dealing investigation, and on January 17, 2002, an informant called Percifield's cell phone and asked to purchase some cocaine. Percifield told the informant that he was in Pennsylvania, but said that one of his runners would drop the cocaine off at her house. The runner dropped off the cocaine later that night, and the next day the informant called Per-

---

1. The State conceded to the trial court and concedes here that Percifield's statements made to Detective Crussen after he had requested to speak with counsel were made in violation of his state and federal constitutional rights. Further, the trial court, in denying Percifield's motion to suppress, found that Percifield's "statements made after having said to the police officers, 'Well, let me call an attorney friend of mine,' must be suppressed." Appellant's Appendix at 91. We agree with the trial court that any statements Percifield made to Detective Crussen after he had requested to speak with counsel were made in violation of his federal and state constitutional rights and must be suppressed.

cifield at his residence and arranged to meet at Taco Bell so that she could pay for the cocaine she had received the day before and purchase more cocaine. After this call, a Drug Enforcement Administration ("D.E.A.") agent watched Percifield leave his residence in a white van, drive to the Taco Bell, and meet the informant. The informant paid Percifield the money, and he gave her another half-ounce of cocaine. The informant told Officer Hill that Percifield had told her that he had just re-supplied himself which Officer Hill thought to be consistent with the fact that Percifield had been in Pennsylvania the day before.

Thus, the record reveals that the informant called Percifield at his residence, a D.E.A. agent saw Percifield leave his residence, and then Percifield participated in a controlled buy with the informant. We conclude that Detective Hill's testimony indicated that there was a fair probability that contraband or evidence of a crime would be found at Percifield's residence. Therefore, even excluding the evidence of Percifield's tainted admission, there was a substantial basis to conclude that probable cause existed to search Percifield's residence. The trial court did not err by denying Percifield's motion to suppress the evidence seized as a result of the search warrant.

### B.

The next issue is whether the trial court erred by denying Percifield's motion to suppress his cellular phone records. The cellular phone records were obtained when the circuit court approved a prosecutor subpoena duces tecum. Percifield argues that the circuit court was precluded from issuing the subpoena pursuant to Ind. Code § 33–14–1–3 (2002), which provided that:

> Whenever any prosecuting or district attorney shall receive information of the commission of any felony or such district attorney of the commission of any misdemeanor he shall cause process to issue from a court having jurisdiction to issue the same, (*except the circuit court,*) to the proper officer, directing him to subpoena the persons therein named likely to be acquainted with the commission of such felony or misdemeanor, and shall examine any person so subpoenaed before such court touching such offense; and if the facts thus elicited are sufficient to establish a reasonable presumption of guilt against the party charged, said court shall cause so much of said testimony as amounts to a charge of a felony or misdemeanor to be reduced to writing and subscribed and sworn to by such witness, whereupon such court shall cause process to issue for the apprehension of the accused, as in other cases.

(emphasis added).[2] Percifield argues that this statute expressly precluded the Monroe Circuit Court from issuing the subpoe-

---

2. Ind.Code § 33–14–1–3 was repealed by Pub.L. No. 98–2004, § 164 (effective date July 1, 2004) and as part of the recodification of Title 33 it now appears in the Code as 33–39–1–4 (Supp.2004), which reads as follows:

(a) When a prosecuting attorney receives information of the commission of a felony or misdemeanor, the prosecuting attorney shall cause process to issue from a court (except the circuit court) having jurisdiction to issue the process to the proper officer,

directing the officer to subpoena the persons named in the process who are likely to have information concerning the commission of the felony or misdemeanor. The prosecuting attorney shall examine a person subpoenaed before the court that issued the process concerning the offense.

(b) If the facts elicited under subsection (a) are sufficient to establish a reasonable presumption of guilt against the party charged, the court shall:

na duces tecum authorizing the production of his January 17, 2002, cellular phone records.

I.C. § 33–14–1–3 was "enacted in 1852 ... to give the common pleas courts, which were abolished in 1873, a procedure for investigation of criminal activity similar to the grand jury method in the circuit courts." *Stiles v. State*, 156 Ind.App. 675, 681, 298 N.E.2d 466, 469 (1973). In *Ellison v. State*, 125 Ind. 492, 494, 24 N.E. 739, 740 (1890), our supreme court addressed whether circuit courts were precluded from issuing subpoenas under I.C. § 33–14–1–3 and held that:

> The inquisition provided for by this statute is simply a preliminary step by which the court may acquire jurisdiction. It was a mode of procedure by the common pleas court, conceding that it had power to proceed in cases of felony, by which it sought to charge and apprehend the offender. In the circuit court the mode of procedure has always been quite different. In that court the mode, in such cases, was to inquire by the grand jury into violations of the criminal laws of the state. It is settled by adjudication that the mode of procedure in the common pleas court was not transferred to the circuit court by the act abolishing the former, where the circuit court had an established mode of its own. The case of *State v. Justice*, 46 Ind. 210 [1874 WL 5708], is a case in point. In that case it was held that the act of the general assembly transferring the business and jurisdiction of the common pleas court to the circuit court did not transfer to the latter court the mode of proceeding by affidavit and information in a criminal case. So in this case, as the mode of inquiring as to violations of the criminal law of the state was by investigation before the grand jury, we are of the opinion that the mode prevailing in the common pleas court, by the inquisition provided for in the statute under consideration, was not transferred to the circuit court. It is plain that it was the intention of the general assembly, at the time of the passage of this statute, that no such inquisition should be conducted in the circuit court, for that court is expressly excepted from its operation. It is reasonable to suppose that the reason for such exception was that that court had ample means, by the use of the grand jury, to inquire into and punish all criminal offenses of which it had jurisdiction. We are of the opinion that the circuit court has no power to hold the inquisition provided for in this statute, and that the appellant was not in contempt in refusing to submit to an examination of the kind in question.

125 Ind. at 496–497, 24 N.E. at 741. Almost one hundred years later, in *In re Order for Ind. Bell to Disclose Records*, 274 Ind. 131, 135, 409 N.E.2d 1089, 1092 (Ind.1980), our supreme court again examined I.C. § 33–14–1–3. There, our supreme court held that under I.C. § 33–14–1–3, "[a] prosecutor has the same ability to accumulate evidence as the grand jury" adding that I.C. § 33–14–1–3 provided a prosecutor with the authority "to charge an individual with the commission of a crime without first submitting the evidence to a grand jury."[3] *Id.* at 134–135, 409 N.E.2d at 1091. The effect of *Indiana*

---

(1) cause the testimony that amounts to a charge of a felony or misdemeanor to be reduced to writing and subscribed and sworn to by the witness; and

(2) issue process for the apprehension of the accused, as in other cases.

**3.** The trial court's order addressing this statute provides that:

Chief Justice Givan, writing on behalf of a unanimous court in Indiana Bell, quoted I.C. 33–14–1–3, conspicuously omitting the parenthetical language "(except the circuit court.)"

*Bell* was to distinguish *Ellison,* which was based upon the premise that the circuit court was exempt from the subpoena power of I.C. § 33–14–1–3 because it "had ample means, by the use of the grand jury, to inquire into and punish all criminal offenses of which it had jurisdiction." 125 Ind. at 497, 24 N.E. at 741.

As our supreme court recognized in *Rita v. State:*

> [I.C. § 33–14–1–3] provides a tool for prosecutors to investigate crimes in the first instance. All the statute says is that if a prosecutor learns that a crime may have been committed, the prosecutor may, first, subpoena anyone in the jurisdiction who may know about the crime and, second, seek "process" leading to an arrest if the facts uncovered support that action. Thus, by its express terms the statute is not available at the post-indictment or post-information stage.

674 N.E.2d 968, 970 (Ind.1996).[4] Four years later in *Oman v. State,* our supreme court held that:

> Indiana prosecutors are statutorily empowered to investigate criminal activity without the aid of a grand jury and may issue subpoenas to gather both testimonial and documentary evidence. See Ind.Code § 34–14–1–3 (1993). This investigative authority includes the ability to gather documentary evidence maintained by a third party, provided that a trial judge or magistrate first determines the subpoena is reasonable under the Fourth Amendment.

Appellant's Appendix at 93. However, we recognize that in *In re Order for Ind. Bell to Disclose Records,* 274 Ind. 131, 133, 409 N.E.2d 1089, 1090 (Ind.1980), the Monroe Superior Court issued the subpoena duces tecum at issue, and the omitted language was not directly involved in the supreme court's decision, because a superior court, not a circuit court, had approved the subpoena duces tecum at issue in that matter.

737 N.E.2d 1131, 1147 (Ind.2000),[5] *reh'g denied, cert. denied,* 534 U.S. 814, 122 S.Ct. 38, 151 L.Ed.2d 12 (2001). We also recognize that circuit courts have issued subpoenas duces tecum under I.C. § 33–14–1–3. *See In re Thompson,* 479 N.E.2d 1344, 1346 (Ind.Ct.App.1985) (holding that the subpoena duces tecum issued by the Grant Circuit Court directing a bank to produce copies of certain documents was not unreasonably broad and did not constitute a violation of the Fourth Amendment prohibition against unreasonable searches and seizures), *reh'g denied; Forbes v. State,* 810 N.E.2d 681, 685 (Ind.2004) (holding that the subpoena duces tecum issued by the Clark County Circuit Court requesting that a Kentucky hospital produce medical records was not so unreasonable as to warrant suppression and the subpoena was not defective).

Here, we are asked to consider an exception that has remained in I.C. § 33–14–1–3 (now I.C. § 33–39–1–4) since 1852, when the court structure and prosecutorial regime was quite different than now. Given the current structure of the courts and the organization of prosecutors, the exception is an anachronism. When we look at a statute, we presume that the legislature intends its language to be applied in a logical manner consistent with the intent of the statute's underlying policy and goals. *See Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 710 (Ind. Ct.App.2001), *trans. denied.* The purpose of the statute is to enable prosecutors, not to limit jurisdiction of circuit courts. As

4. In *Rita,* the subpoenas were issued by the St. Joseph Superior Court.

5. In *Oman,* the subpoenas were issued by the prosecutor without prior approval from any court. The case came up on appeal from a denial by the LaPorte Superior Court of a motion to suppress.

our supreme court has held, the main purpose is to provide review by a court to see that a subpoena is warranted by the circumstances and that its scope is appropriate. *See Oman,* 737 N.E.2d at 1147.

We also recognize that there are several counties in Indiana, including Monroe County, that have only circuit courts,[6] and if we were to follow Percifield's reasoning, prosecutors in those counties would be unable to issue a subpoena duces tecum in accordance with I.C. § 33–14–1–3 (now I.C. § 33–39–1–4). This conclusion is inconsistent with the purpose of the statute. We conclude that I.C. § 33–14–1–3 (now I.C. § 33–39–1–4) does not prohibit circuit courts from issuing a subpoena duces tecum, and the trial court did not err by denying Percifield's motion to suppress his cellular phone records.

In summary, we hold that: (1) after excluding evidence of Percifield's tainted admission, there was a substantial basis to conclude that probable cause existed to search Percifield's residence, and the trial court did not err by denying Percifield's motion to suppress the evidence seized as a result of the search warrant; and (2) I.C. § 33–14–1–3 (now I.C. § 33–39–1–4) does not prohibit circuit courts from issuing subpoenas duces tecum, and the trial court did not err by denying Percifield's motion to suppress his cellular phone records.

For the foregoing reasons, we affirm the judgment of the trial court denying Percifield's motion to suppress.

Affirmed.

DARDEN, J., and ROBB, J., concur.

---

**6.** The following counties have only circuit courts: Benton County, Brown County, Franklin County, Owen County, Monroe County, Parke County, Perry County, Union County, and Warren County. *See* Ind. Administrative Rule 8(B)(1).